299 P.2d 827

N. J. MEAGHER, Jr., Mary Alice Arentz, Katherine C. Ivers, Margaret Frances Price, N. J. Meagher and Katherine T. Meagher, his wife, Plaintiffs, Respondents and Appellants on Separate Appeal,

v.

EQUITY OIL COMPANY, a corporation, Weber Oil Company, a corporation, Joe T. Juhan, Paul Stock, and All Unknown Persons who claim any interest in the subject matter of this action, Defendants, Appellants and Respondents on Separate Appeal.

No. 8483.

Supreme Court of Utah.

July 5, 1956.

Ray Rawlins, Jones & Henderson, Gustin, Richards & Mattsson, Burton W. Musser, Salt Lake City, Oliver W. Steadman, Cody, Wyo., Richard Downing, Denver, Colo., for appellants.

Herbert Van Dam, Jr., Salt Lake City, Gilbert C. Wheat, San Francisco, Cal., for respondents.

CROCKETT, Justice.

This litigation is before this court for its fourth engagement, having been here on three prior occasions.[1] These repeat performances are not due to the merit of the controversy nor to the popularity of the subject matter with this court. They seem rather to stem, to a considerable extent, from an unwillingness of defendants to recognize and perform their obligations to plaintiffs as adjudicated in prior proceedings.

The controversy centers around rights in a lease, referred to as the "Sheridan lease" in certain oil lands in Uintah County. The origin and history of this lease are set out in our prior decisions referred to above, and, except to the extent incorporated herein, do not warrant repetition here. The original bases of the rights of the parties in the Sheridan lease are immaterial here except to say that the defendant, Paul Stock, and one Ray Phebus were assignees of rights therein; and that in 1944, for reasons likewise not material here, Stock executed an instrument called a "Release" of his interest (hereinafter called the "Stock half") in the lease to the fee holder, N. J. Meagher, Sr., which in this later phase of the litigation has been the subject of dispute between the parties. The other one-half interest (referred to as the "Phebus half") is now owned by the defendants, Stock, Joe T. Juhan and Weber Oil Company, who derive their interest through Phebus, and which interest is not in dispute here.

[1]. Meagher v. Uintah Gas Co., No. 6972 (October 27, 1947) 112 Utah 149, 185 P.2d 747; Phebus v. Dunford, No. 7187 (November 8, 1948) 114 Utah 292, 198 P.2d 973; Meagher v. Uintah Gas Co., No. 7723 (February 11, 1953) Utah, 255 P.2d 989. Rehearing denied January 19, 1954.

The original action was instituted by N. J. Meagher, Sr. in 1944. While the litigation has been pending, the Equity Oil Company, in 1948, with full knowledge of the parties, and under an agreement with Stock, Juhan and Weber Oil Company, entered upon the property, drilled and discovered oil; and since that date has continued to produce and sell the oil from the property. The parties, including the plaintiff, N. J. Meagher, Sr., and the defendants, Stock, Juhan and Equity Oil Company, stipulated in court that the ownership of these parties is 81½% of the oil rights under the lease, there being 18½% interest therein outstanding as royalties not involved in the litigation. As to the one-half interest (the Stock half) claimed by Meagher, and his children, who are his assignees and present plaintiffs, it was agreed that Equity Oil, "has impounded, set aside and holds in a special account 40.75% of the gross crude oil runs from said property after deducting operating expenses and will continue to so impound such per cent of gross crude oil runs as long as title questions persist and until the court otherwise orders" and the court made and entered its minute entry in accordance with such stipulation.

The lower court decided the issue as to the effect of the Stock "release," relating to the Stock half interest, in favor of Mea- gher, which was affirmed by this court in Case No. 7723 February 11, 1953.[2] Upon remand to the District Court Stock and Juhan, and Weber Oil Company, their successor, and Equity Oil Company failed and refused to account to the plaintiffs. This was based in part upon the ground that the latter two companies were not parties to the prior proceedings. Plaintiffs then, in May, 1954, commenced this action joining said companies as defendants with the individuals named, seeking to have the question of their ownership determined as against all of the defendants; for an accounting of the operation and proceeds from oil production on the leased property and payment of proceeds due them; and added a fourth count for damages for increased income taxes plaintiffs allege they will have to pay because the income was not paid to them as it accrued. Pursuant to motion, the trial court dismissed this fourth count in December, 1954.

The parties made motions for summary judgment and the trial court heard arguments in support thereof in May, 1955. Thereafter on October 14, 1955, the court made and caused to be placed in the file his written "Rulings on Motions" by which he determined the following:

1. That the defendants Juhan and Stock are bound by the decision handed down by this court in 1953 and are precluded from

2. Foot note 1, supra.

200

litigating issues that were or could have been raised there;

2. That the Weber Oil Co., being in privity with Stock and Juhan, is also bound by the former judgment;

3. That the Equity Oil Company appears only as a stakeholder, and that it has maintained a special fund of at least 40.-75% of the "gross crude oil runs [returns]" after expenses of operations;

4. That the plaintiffs are entitled to a summary judgment against Equity Oil Company for an accounting of the operations and profits of the oil produced by that company on the lands in question, and for a judgment against Equity for an amount equal to one half the proceeds after operating expenses are deducted.

After considering proposed findings and judgments submitted by the respective parties, and objections thereto, on December 13, 1955, the court entered its Interlocutory Judgment and Decree in accordance with the above recited "rulings on motions"; adjudging that plaintiffs are entitled to an undivided one-half interest in the lease as against Weber Oil Company; and also as against Stock and Juhan, in accordance with the former judgment; that Equity Oil Company as stakeholder be required to render an accounting to the plaintiffs of the oil production and sale, and to pay to plaintiffs 40.75% of the gross proceeds, less one-half of the operating expense; and authorized said payment to be made from the impounded funds held by Equity.

A procedural difficulty developed which has given rise to much perplexity. On the same day as the Interlocutory Judgment was signed and entered, December 13, 1955, Judge Tuckett, at his chambers in Vernal, Utah, signed the order which has been the cause of the mischief. It was presented to him by attorney Burton W. Musser, without having served it upon opposing counsel or indicating to them that such an order was being presented to the court. It directed that Equity Oil Company pay to Stock and Juhan one-half of the funds impounded and held by Equity. It will be noted that there was no stipulation that proceeds due the Phebus half of the lease should be impounded; that Stock, Juhan and Weber Oil Company had been currently receiving that share (40.75%) of the proceeds, and that payment to them of an additional one-half of the other half of the funds which had been impounded, would give them a total of three-fourths of the proceeds. This was not in accordance with the prior decision of this court, nor with the subsequent judgment of the trial court which had just been entered.

Upon the same day as he signed the order, the trial judge advised plaintiffs' counsel, Mr. Herbert Van Dam, Jr., by telephone of the fact that Mr. Musser had presented such an order. Mr. Van Dam asked the judge if it would affect the rights

of the plaintiffs, to which the judge answered that it was his understanding that it would not, but would merely permit the defendants to withdraw the one-half of the proceeds to which they were entitled, and that it was their privilege to divide it among themselves as they saw fit. Within minutes thereafter, Mr. Van Dam telephoned back to Judge Tuckett and asked to be advised as to the exact contents of the order. Upon learning thereof, he explained to the judge that the order did seem to be in conflict with the judgment and decree he had entered. Whereupon the judge advised that he did not so intend; that he would withhold the order and take it back to Provo with him, and would hear the parties as to the propriety of the order. He asked Mr. Van Dam to notify defendants' counsel of such fact. It appears that some unsuccessful efforts were made to contact Mr. Musser by telephone. Upon return to his principal office in Provo, Judge Tuckett, on December 15, 1955, on his own initiative, entered an order vacating the order of the 13th, reciting that he did so on the ground that the order of the 13th was erroneously made and was in conflict with the judgment he had previously entered. Thereafter, plaintiffs noticed a motion for an order clarifying the record with respect to the inadvertent order of December 13. Before the hearing thereon, Mr. Musser filed an application to disqualify the district judge, to which maneuver one may attach his own significance.

The defendants took the position in the court below that the order signed on the 13th was the valid and subsisting judgment; that the court was without authority to enter the corrective order of the 15th, and that the same is a nullity. They maintained that position when intermediate appeal was sought before this court, and so maintain that position in the present proceeding. Inasmuch as all parties have appealed and have variously stated the divers issues they each contend are raised, we do not delineate them, but proceed to consider the basic issues in controversy between the parties.

The first question relates to the conflicting orders of December 13 and December 15, 1955, and which of them is valid. It is well established that the court may vacate, set aside, or modify its orders or judgments entered by mistake or inadvertence which do not accurately reflect the result of its judgment.[3] It is plainly apparent that the trial court thought he was signing an order that Equity Oil release the one half of the proceeds of oil production to Stock and Juhan which it had been adjudicated previously that they were entitled to (the Phebus half), and that

---

3. In re Costa's Estate, Cal.App., 224 P. 2d 851; State ex rel. Vaughn v. District Court, 111 Mont. 552, 111 P.2d 810; Boylan v. Marine, 104 Cal.App.2d 321, 231 P.2d 92.

the judge did not know that they had been currently receiving such funds, nor that the effect of the order he signed would have been to release to them one half of the other half (the Stock half) of the funds to which it had been adjudicated that they were not entitled. This act did not reflect his judgment, and, therefore, does not represent an error in judgment on his part. It was a mistake of a perfunctory or clerical nature apparently resulting from an erroneous assumption that the order as prepared by counsel correctly reflected the judgment of this and the lower court. It is the type of error the court could and properly did, correct upon its own motion. The authority of the court to cause its proceedings and its judgments and orders to be correctly set forth in its records is necessarily inherent in its powers for the purpose of administering justice.[4]

Related to the matter just discussed is the contention here made that the adjudication that plaintiffs are entitled to one-half interest in the proceeds of the lease relates to the "Stock half." This is based on the assertion that it is not disputed that the "Phebus half" belongs to the defendants, and that the "Phebus half" has not been in litigation in the present case. The clarity with which the contrary is shown by the record in this case renders it difficult to attach any serious credibility to such an argument. The findings of Judge Dunford in the prior case, entered June 4, 1951, clearly and definitely set out the interests in the oil rights in said lease: Juhan, ⅜; Stock, ¼₆; Weber Oil Company, ¼; aggregating one half; and the other one-half interest to Meagher, which was affirmed by this court in Case No. 7723;[5] and the Interlocutory Judgment and Decree of December 13, 1955, properly accords therewith.

Weber Oil Company is a subsidiary of Equity Oil Company; the defendants, Stock and Juhan, were among its original incorporators; Weber took its interest in this lease with full knowledge of the facts concerning the ownership of this property and of the pending litigation; it has been in privity with such defendants in connection with the activities of this lease and the carrying on of this litigation;[6] it was joined and has been before the court as a defendant in this action and is bound by the judgment as are the individual defendants.

---

4. Rule 7(b): " * * * Any order made without notice to the adverse party may be vacated or modified without notice by the judge who made it, * * *"; see also National Farmers Union Property and Cas. Co. v. Thompson, 4 Utah 2d 7, 286 P.2d 249; see also 60(a) U.R. C.P.; and see Wilson v. Los Angeles County Employees Ass'n, 127 Cal.App.2d 285, 273 P.2d 824.

5. See footnote 1, supra.

6. That one buying property with knowledge that it is in litigation, is bound by judgment rendered in such litigation, see: Whittaker v. Greenwood, 17 Utah 33, 53 P. 736.

Equity Oil Company asserts no claim of ownership in the property. It is responsible to the plaintiffs for the proceeds from production of oil from the property as their interests appear, that is, 40.75% of the proceeds less one-half of the operating expenses. Equity's activities in connection with this property have been as agent of Stock, Juhan and Weber Oil Company, and they are responsible for its conduct in connection with such activities.

■ The final point meriting attention is plaintiff's charge that the trial court erroneously dismissed their fourth count, which claims damages for income taxes they allege will be enhanced over what they would have paid had they received the income as it accrued. This is a novel theory and one with which we have never heretofore been confronted. Plaintiffs cite no authority supporting it. We deem it unnecessary to here decide whether under some circumstances a wrongful and designed withholding of funds might provide a basis for such a cause of action. In the instant case, the answer to plaintiffs' contention is found in the fact that plaintiffs (predecessor) stipulated that the fund should be held by Equity "as long as title

questions persist and until the court otherwise orders." It is to be assumed that this was until final determination.

■ It is further to be observed that although this court finds no merit in the contention that the inadvertent order of December 13, 1955, was valid there were in fact two orders signed by the trial judge about which there was dispute between the parties, and that Equity, through its counsel, has stated and reiterated its position to be that of willingness to pay over this money as soon as it is determined who is entitled to it. It is our intention that remittitur in this case will fulfill this condition. We regard the judgment, which is referred to as Interlocutory Judgment and Decree, signed by Judge Tuckett on December 13, 1955, as interlocutory only in that it is necessary that there be an accounting as to the proceeds due plaintiffs in accordance with their interests and payment of the same. But such judgment is final insofar as it determines the rights of the parties hereto in the Sheridan lease.

Judgment affirmed. Costs to plaintiffs.

McDONOUGH, C. J., and HENRIOD, WADE and WORTHEN, JJ., concur.