Gerald E. HIGLEY and Ruth J. Higley, husband and wife, Plaintiffs and Appellants,

v.

A. Cardon McDONALD and Dollie McDonald, husband and wife, Defendants and Respondents.

No. 18755.

Supreme Court of Utah.

April 27, 1984.

James W. Guthrie, Hansen, Thompson & Dewsnup, Salt Lake City, for plaintiffs and appellants.

Duane A. Frandsen, Michael R. Jensen, Frandsen, Keller & Jensen, Salt Lake City, for defendants and respondents.

HALL, Chief Justice.

Plaintiffs brought this action in ejectment to secure the removal of defendants' mobile home and other personal property from real property allegedly owned by plaintiffs. The district court, sitting without a jury, entered judgment of no cause of action against plaintiffs. We affirm.

In 1951, Arthur Bolotas (hereinafter "Bolotas") purchased a tract of mountain land located along the eastern shoreline of Scofield Reservoir in Carbon County, Utah. In terms of its legal description, the property is situated within the southeast quarter of Section 4, Township 12 South, Range 7 East, Salt Lake Base & Meridian.

In 1960, Bolotas hired John Bene (hereinafter "Bene"), a licensed surveyor, to survey and plat out a portion of the shoreline property for development as a mountain home subdivision. Bene surveyed the land into lots and blocks and set survey markers (drill steel) at the corners of the lots. He tied his survey to a point established by him as the northeast corner of the southeast quarter of the southeast quarter of Section 4. This point was determined by locating the survey markers representing the northeast corner and the east quarter corner of Section 4 and then, through the use of survey equipment, by extending an imaginary line through those two points and to the south thereof a distance of 1,320 feet (standard 40-acre distance). A steel pin was placed at this point by Bene as a survey marker.

Bene testified, in respect to the northeast corner and east quarter corner reference points, that he found the former point marked, as most sectional corners typically are, by an authentic brass cap placed by government surveyors, while the latter point was marked by a ¾-inch bent steel rod, which was shown to him by an adjoining landowner, Justice Seeley. This latter point has been denominated the "Seeley Corner."

After completing his survey of the Bolotas property, Bene prepared a subdivision plat (hereinafter "Bolotas Plat") from the data obtained in the survey. Bolotas postponed recording the plat until the remaining portion of his property could be surveyed and included in the plat. However, the remainder of the property was never surveyed and subdivided, and thus the plat was never recorded.

In 1969, plaintiffs Gerald and Ruth Higley and defendants Cardon and Dollie McDonald (hereinafter referred to in the singular as plaintiff and defendant) purchased two adjoining lots in the Bolotas Subdivision. The lot purchased by plaintiff was designated on the Bolotas Plat as Lot 26 Block 1 and was situated to the south of defendant's lot, which was designated as Lot 27 Block 1.

At the time the parties negotiated the purchase of their respective lots, the only descriptions they had of the lots were the "lot and block" descriptions indicated on the Bolotas Plat. Aside from that, the parties could see the physical monuments at the corners of the lots (set previously by Bene) and could determine therefrom the sizes and locations of the lots. There appears to be no inconsistency between the lot dimensions and locations as depicted on the Bolotas Plat and as represented by the physical monuments.

The deeds to Lots 26 and 27 were prepared by attorney Luke Pappas (hereinafter "Pappas"). Inasmuch as the Bolotas Plat was not of record at the time the deeds were prepared, Pappas described the subject lots by metes and bounds descriptions. However, in anticipation that the plat would be recorded in the future and to facilitate future references to specific lots in the subdivision, Pappas included with the metes and bounds descriptions the lot and block numbers as set forth on the plat.

Pappas testified that the metes and bounds descriptions contained in plaintiff's and defendant's deeds were calculated from the dimensions on the Bolotas Plat. Notwithstanding, he also testified that the metes and bounds descriptions were at variance with the lot and block dimensions on the Bolotas Plat in that the former represented the location of the lots to be 40 feet farther to the north than the latter. This discrepancy, according to Pappas, resulted from the circumstances described hereafter: Following a conveyance from Bolotas to one Jouflas of four lots located in the same block (Block 1) as, and just south of, Lots 26 and 27, Bolotas informed Pappas that he (Bolotas) had measured (apparently onsite) a section of Block 1 and had found that approximately 40 feet more land existed in that block than was included in the plat dimensions. Based on this measurement, Pappas drew up a description extending the northern boundary of Block 1 an additional 40 feet. He subsequently used that description as a reference in preparing the metes and bounds descriptions on plaintiff's and defendant's deeds. Sometime thereafter, Pappas made an on-site measurement himself and discovered that the additional 40 feet did not exist and that the actual dimensions of Block 1 and the lots included therein were precisely as they are recorded on the Bolotas Plat. He therefore concluded that the metes and bounds descriptions in plaintiff's and defendant's deeds, containing the additional 40 feet of land, were in error. Unfortunately, this error was never corrected, or even revealed, prior to the institution of this lawsuit.

In 1970, plaintiff Gerald Higley, with the assistance of defendant Cardon McDonald, surveyed the north-south boundary line between their respective properties and set stakes along that line in preparation of moving their mobile homes onto their lots. Shortly thereafter, the parties moved their mobile homes onto their lots, positioning them within the staked areas.

In 1971, plaintiff informed defendant that defendant's mobile home was encroaching onto plaintiff's lot due to an error they had made in their 1970 survey. Defendant responded by contacting Bene and requesting his services in settling the dispute. In 1972, Bene surveyed the boundary between the two lots, using as

reference points the drill steel survey markers he had set at the corners of the lots in his original 1960 survey, and determined that defendant's mobile home was overlapping the boundary line and encroaching 10 to 12 feet onto plaintiff's lot. Thereafter (during that same year), defendant moved his mobile home a distance of 10 to 15 feet to the north. Plaintiff witnessed the moving of the trailer and expressly conceded to the adequacy thereof.

After defendant's mobile home had been relocated, Bene again made an on-site inspection and survey of defendant's lot and determined therefrom that defendant's mobile home was no longer encroaching on plaintiff's lot and that said mobile home was positioned entirely within the bounds of defendant's lot, as that lot was established by Bene in his original (1960) survey and as it appears on the Bolotas Plat.

Since the 1972 reestablishment of the boundary line between Lots 26 and 27, the parties have planted trees along that line, and the power company has placed a utility pole on the same.

In 1977, plaintiff once again informed defendant that his (defendant's) mobile home was encroaching on plaintiff's property. Plaintiff's claim was purportedly based upon a survey performed by a Mr. Spensko in 1974 or 1975. Defendant rejected this claim and refused to move his mobile home again. This action ensued.

The trial court observed that the metes and bounds descriptions included in the deeds to Lots 26 and 27 were inconsistent with the lot and block descriptions also included therein. The court ruled that the inclusion of inconsistent legal descriptions within the subject deeds rendered those deeds ambiguous. As a result, parol evidence was allowed to clarify the intent of the parties and their common grantor (Bolotas) as to the dimensions of the two lots in question, as well as the location thereof.

At the conclusion of the presentation of evidence, the trial court ruled that the parties intended to purchase Lots 26 and 27, and Bolotas intended to convey the same, in accordance with the lot and block dimensions on the Bolotas Plat. In addition, the court found that the lots occupied and possessed by the parties at that time had the same dimensions (square footage) and were in the approximate location as the lots (i.e., Lots 26 and 27) depicted on the Bolotas Plat. It was therefore concluded that defendant's mobile home was not encroaching on plaintiff's lot, but was situated within the boundaries of defendant's own lot.

Plaintiff's sole contention on appeal is that the measurements and calculations indicated on the Bolotas Plat relative to Lots 26 and 27 do not support the foregoing .conclusion. He maintains that he proved at trial by stipulated evidence that defendant's mobile home encroaches approximately 30 feet onto his (plaintiff's) land as calculated and measured from the Bolotas Plat.

The stipulated evidence referred to by plaintiff is a diagram of Lots 26 and 27 produced by Bene in 1981, during the pendency of this lawsuit. Said diagram (hereinafter referred to as the "deed survey") illustrates the location of defendant's mobile home in relation to Lots 26 and 27, using the metes and bounds descriptions contained in plaintiff's and defendant's deeds. According to the deed survey, defendant's mobile home encroaches across the full 40- to 45-foot north-south width of plaintiff's lot (i.e., Lot 26).

Plaintiff does not, however, claim that the encroachment extends the full 40 to 45 feet indicated on the deed survey. He observes that the metes and bounds descriptions in the deeds erroneously represent the location of the disputed boundary line as being 15 feet farther to the north than it actually measures on the Bolotas Plat. From this observation, he concludes that the southern boundary of defendant's lot is actually located 15 feet farther to the south than is shown on the deed survey, and thus the encroachment measures only 30 feet rather than the full 45 feet (i.e., 45 less 15).

The premise for plaintiff's argument that the measurements on the Bolotas Plat establish a 30-foot encroachment is the belief that the metes and bounds descriptions on

the deeds, from which the deed survey was taken, are consistent with the lot and block measurements on the Bolotas Plat. This premise, however, is false. The inconsistency between the metes and bounds descriptions and the Bolotas Plat measurements has heretofore been shown through the testimony of the attorney who prepared the metes and bounds descriptions, namely Luke Pappas. Pappas testified that he included in the metes and bounds descriptions an extra 40 feet of ground that did not appear on the Bolotas Plat and that he later determined to be in error. It was his opinion that the 40-foot overage had been incorporated into the deed survey and was therefore responsible for the encroachment shown on that survey.

The testimony of Luke Pappas with respect to the 40-foot overage was corroborated by a draftsman named Martin Smart, who was commissioned during the pendency of this action to sketch the various lots in Block 1, including Lots 26 and and 27, according to the metes and bounds descriptions in the respective deeds. His survey confirms the conclusion drawn by Pappas that an approximate 40-foot discrepancy exists between the representations on the Bolotas Plat of the location of the Block 1 lots and the representations in the metes and bounds descriptions of the same.

The evidence in this case, particularly that discussed above, supports the trial court's determination that the measurements and dimensions on the Bolotas Plat relative to Lots 26 and 27 establish the location of defendant's mobile home as being entirely within the boundaries of defendant's lot and therefore not encroaching on plaintiff's lot.

Furthermore, as to plaintiff's observation that only a 15-foot variance exists between the metes and bounds dimensions and the Bolotas Plat dimensions, the evidence stated above supports the conclusion that the variance was more than just 15 feet and that it was approximately 40 feet.

■ Having considered the evidence (i.e., deed survey) alleged to have been entered upon stipulation by the parties, we now turn our attention to the merits of the stipulation itself. In his appellate brief, plaintiff's version of this stipulation is as follows:

The parties ... stipulated that the survey [deed survey] accurately represented the location of the appellants' and respondents' property as described in the respective deeds, and that respondents' 60-foot mobile home is accurately depicted on the survey in relation to the deed descriptions, and that it is actually located on the face of the earth in the place depicted in Exhibit 3 [deed survey].

He points out that the well-settled rule with respect to stipulations such as this is that they are conclusive and binding on the parties unless, upon timely notice and for good cause shown, relief is granted therefrom. He further indicates that the rule precludes the adoption of findings in conflict with stipulated facts.[1]

■ While plaintiff accurately cites the rules in this regard, we do not adopt his characterization of the stipulation. According to the record, the extent to which the parties stipulated respecting the deed survey was that it could be admitted into evidence and that it depicts the "approximate" location of defendant's mobile home. We cannot agree that the effect of this stipulation was to bind or obligate the trial court to apply the measurements and calculations on the deed survey in determining the location of the disputed boundary.

Plaintiff has failed to demonstrate error. Affirmed. Costs to defendant.

OAKS, HOWE and DURHAM, JJ., and J. DENNIS FREDERICK, District Judge, concur.

STEWART, J., does not participate herein; FREDERICK, District Judge, sat.

---

1. *First of Denver Mortgage Investors v. C.N. Zundel & Assocs.*, Utah, 600 P.2d 521 (1979); *State v.*

*Bailey*, 3 Utah 2d 254, 282 P.2d 339 (1955).