Troy **DARRINGTON**, Plaintiff
and Appellant,

v.

Stanley L. **WADE**, Janet Wade, and
Robert Iverson, Defendants
and Appellees.

No. 900544–CA.

Court of Appeals of Utah.

May 21, 1991.

Denver C. Snuffer, Jr. (argued), Maddox, Nelson & Snuffer, Murray, for plaintiff and appellant.

A. Paul Schwenke, Johnson and Associates, Salt Lake City, for defendants and appellees.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff appeals the lifting of default judgment in his favor and the entry of summary judgment for defendants in a personal injury action. Finding no error in the court's decision to vacate the default judgment but finding unresolved issues of material fact, we reverse and remand.

## FACTS

Stanley and Janet Wade, the defendants in this case, are the owners of what was originally a vacant lot. At some point, an enterprising individual approached Wades about the possibility of leasing the lot for the purpose of constructing a skateboard park. The facts giving rise to this action occurred several years later, after construction of the skateboard park had been completed and tenancy had changed several times.

On May 23, 1983, Wades leased the skateboard park to defendant Robert Iverson. Iverson's stated intention was to open the skateboard park to the public and charge admission for its use. Sixteen days later, Troy Darrington was injured while using one of the skateboard runs at the park.

Darrington's injuries apparently resulted from a missing drain cover at the bottom of the run he was using. He crashed abruptly when his skateboard lodged in the drain hole where the cover should have been.

There is some dispute regarding the missing drain cover. According to Darrington, who used the skateboard park with some frequency, one of the other runs had previously been "abandoned" because of a missing drain cover, although there is no evidence that the abandoned run had been fenced off, posted with a warning sign, or otherwise prohibited from public use. However, skateboarders apparently refrained from using it because of the danger involved in using the run without a drain cover. Darrington says he avoided using the abandoned run for that very reason. On the day he was injured, however, Darrington claims that the drain cover had been taken from the regularly used run he was on to cover the drain opening in the abandoned run. Darrington claims he was injured in the run from which the drain cover had been taken because he did not know it was missing until it was too late.

## PROCEDURAL BACKGROUND

Darrington filed a complaint against Stanley and Janet Wade on September 16, 1983. Sometime later he amended the complaint to include the tenant, Robert Iverson, against whom default judgment was subsequently entered. That judgment is not in issue here.

From the outset Wades attempted to elude Darrington's claims rather than to face them. Ultimately process had to be served by publication, and Wades finally answered through an attorney. During the next two years Wades refused to cooperate with discovery and changed attorneys twice. Darrington's counsel doggedly pursued the case, however, and finally moved to have Wades' pleadings stricken and default judgment entered against them as a discovery sanction.

In October 1986, the trial court granted Darrington's motion for sanctions and entered default against Wades for failing to answer Darrington's interrogatories. The court limited the forthcoming default judgment to the issue of liability, however, and reserved the issue of damages for an evidentiary hearing. Darrington's attorney nonetheless submitted an affidavit as to damages and prepared an order which included an award of damages. Either at Darrington's urging or by inadvertence, the court signed the order and thereby entered a default judgment for the full amount shown in the affidavit.

Wades then changed counsel yet again and their new lawyer moved the court to set aside the judgment, claiming that Wades were not aware default had been entered against them because their previous attorney neglected the case and failed to communicate with them. He also argued there was no evidentiary support for the money judgment, and that such a judgment was contrary to the court's previous order reserving the issue of damages for a hearing. Apparently persuaded by these arguments, the court set aside the judgment and reopened discovery.

Wades continued to be elusive and uncooperative, however, and in February 1988, Darrington again moved for discovery sanctions and to compel Wades' attendance to have their depositions taken. Wades contemporaneously moved for sum-

mary judgment. The court continued the motion for summary judgment and granted the motion to compel.

In compliance with the court's order compelling his appearance, Stanley Wade appeared to have his deposition taken. At the deposition, however, Wade failed to produce certain documents that Darrington had requested. Darrington then noticed a subsequent deposition for the production and explanation of the requested documents. When Wade failed to appear for that deposition, the court awarded costs and attorney fees as a discovery sanction. Darrington scheduled another deposition, but again Wade failed to appear. Once more, Darrington moved to have Wades' pleadings stricken and default judgment entered. Following a hearing on the motion, the court, in its order from the bench, granted the motion for sanctions, struck the pleadings, ordered payment of costs and attorney fees, and granted default judgment against Wades on the issue of liability.

When Darrington's counsel prepared the default judgment, however, he included a judgment for the full amount prayed. Although Wades filed a timely objection to the proposed judgment, for one reason or another the court signed the judgment, apparently without seeing the objection.

Although Wades did not ultimately file a notice of appeal at that juncture, the court granted their motion for an extension of time to appeal because their attorney claimed he never received notice that the default judgment had been entered. He claimed that he thought the court was still considering his objection. In supplemental memoranda filed with the court, Wades' attorney argued that the damages portion of the judgment prepared by Darrington's counsel went beyond the limited scope of the court's oral order granting a default judgment as to liability only. He also asserted that Stanley Wade had technically complied with the court's order compelling discovery by appearing to have his deposition taken at the time and place specified in

the court's order, which did not mandate attendance at subsequent depositions.

Consequently, Wades' attorney argued that upon Stanley Wade's failure to attend the subsequent deposition, Darrington should have made another motion to compel rather than immediately moving for sanctions. Moreover, because Wade's subsequent failure to appear violated no court order, he argued that the discovery sanctions available under Rule 37(b)(2), including entry of default judgment, were inappropriately harsh. *See* Utah R.Civ.P. 37(b)(2). *But see* Utah R.Civ.P. 37(d); *Schoney v. Memorial Estates, Inc.*, 790 P.2d 584, 585 (Utah Ct.App.1990). Despite Darrington's strenuous objections, the court was apparently persuaded by these arguments, and at Wades' urging again set aside the default judgment, entered another order compelling Stanley Wade to appear to have his deposition taken, and ordered payment of additional costs and attorney fees as a discovery sanction for Wade's latest failure to appear. The court subsequently denied Darrington's motion to have the default judgment reinstated.

After Stanley Wade's second deposition was taken in April 1988, Wades made a second motion for summary judgment. The court found that because the lease granted complete and exclusive control of the leased premises to Wades' tenant, defendant Iverson, Wades could not be held liable for Darrington's injuries at the skateboard park. Consequently, the court granted the motion and entered summary judgment against Darrington.

Darrington's appeal raises the following issues: (1) Did the trial court abuse its discretion in vacating the second default judgment and refusing to reinstate it? (2) Did the court err in granting the motion for summary judgment?

## DEFAULT JUDGMENT

Darrington argues that the trial court abused its discretion in vacating the default judgment against Wades and refusing to reinstate it.[1] He contends that because

---

**1.** Although Darrington separately challenged

both the court's setting aside of the default judg-

Wades refused to cooperate in discovery, and failed to make a proper Rule 60(b) motion to have the default judgment set aside, the court erred in vacating the judgment.

■ It is clear from the record that Wades were elusive and uncooperative defendants.[2] Consequently, imposing some sort of Rule 37 discovery sanction on them was certainly justified and, under all the circumstances, we probably would not have found entry of default judgment to be so harsh as to constitute an abuse of discretion had the court chosen to leave that judgment in place. *See Schoney v. Memorial Estates, Inc.*, 790 P.2d 584, 585–86 (Utah Ct.App.1990). *See also Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 961–62 (Utah Ct.App.1989). Moreover, if the court had failed to impose *any* kind of discovery sanction we probably would have found an abuse of discretion. But default judgment is an unusually harsh sanction that should be meted out with caution, *see Schettler*, 768 P.2d at 961, and because the court imposed other appropriate discovery sanctions by awarding costs and attorney fees on several occasions, this is not a case where inappropriate discovery conduct went wholly unpunished.

■ Darrington claims, however, that regardless of the appropriateness of default judgment as a discovery sanction in this case, once the judgment was entered it could be vacated only in accordance with Rule 60(b), upon a proper motion to set aside the judgment. *See, e.g., Schettler*, 768 P.2d at 969 (Utah Ct.App.1989) ("Once a default judgment has been *entered*, it can only be set aside in accordance with Rule

60(b) of the Utah Rules of Civil Procedure."). This notion, however, should only apply to properly entered default judgments which conform to the decision actually made by the trial court.

■ "It is well established that [a] court may vacate, set aside, or modify its orders or judgments entered by mistake or inadvertence which do not accurately reflect the result of its judgment." *Meagher v. Equity Oil Co.*, 5 Utah 2d 196, 299 P.2d 827, 830 (1956). When a trial judge signs an order prepared by counsel, mistakenly or inadvertently assuming that it correctly reflects the court's judgment, the mistake is of a clerical or perfunctory nature, which the court may correct on its own motion. *See id. See also* Utah R.Civ.P. 60(a) ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.").

■ In this case, the trial court's decision to set aside the damages portion of the default judgment is beyond reproach. Because the court's oral order limited default judgment to the issue of liability, the order prepared by plaintiff's counsel containing a provision for money damages clearly exceeded the scope of the court's order. Consequently, the court was fully justified in correcting this error by vacating the damages provision of the judgment, either on its own initiative or at Wades' request. A much closer question is presented by the court's decision to vacate the entire judgment, including the liability determination,

ment and its refusal to reinstate it, a single basic issue is presented: If the court erred in setting aside the judgment, it should have been reinstated; if it was properly set aside, reinstatement would not be in order.

2. It has now been almost eight years since Troy Darrington's injury first occurred in this fairly straightforward personal injury case. Despite the plaintiff's dogged, albeit sometimes overzealous, pursuit of a judgment, Wades employed what appear to have been dilatory tactics at every turn. We find such litigation strategies most obnoxious.

For all the defendants knew, the case may have been susceptible to a quick and easy resolution in their favor. Regardless of how the merits of the case may eventually be resolved, however, if the defendants had shouldered their obligation to face up to the claims against them, and resolve the issue as to their liability, the case could have been concluded much sooner, thereby avoiding a great deal of wasted time and expense. If litigants in every case acted as these have, the justice system would quickly come to a standstill.

without a proper Rule 60(b) motion requesting it to do so.

■ Although Wades never filed a formal motion asking the court to set aside the default judgment, as required by Rule 60(b), they did file a timely objection to the proposed order prepared by Darrington's counsel. Wades also filed additional memoranda supplementing their initial objections. In their supplemental filings, Wades asserted that in addition to the fact that the signed judgment exceeded the scope of the court's oral order, Stanley Wade had also technically complied with the court order compelling him to appear to have his deposition taken. They contended Stanley Wade's subsequent failure to appear violated no court order. Consequently, they argued that Rule 37(b)(2) did not apply and entry of default judgment was too harsh a sanction for what Stanley Wade had done. Apparently persuaded by this reasoning, the court vacated the entire judgment.

Darrington contends that because Wades' supplemental statement was not styled "Motion to Set Aside Default Judgment," in strict accordance with Rule 60(b), the court erred in vacating the judgment. *See Schettler*, 768 P.2d at 969. While we certainly wish to encourage careful adherence to the Utah Rules of Civil Procedure, we view Darrington's argument largely as an attempt to circumvent the merits of Wades' assertions by elevating form over substance.

In a recent case, the Utah Supreme Court was faced with a similar situation. *See Watkiss & Campbell v. Foa & Son*, 808 P.2d 1061 (1991). In that case the trial court entered summary judgment against the defendant. In response, before filing a notice of appeal, the defendant filed a "Motion for Reconsideration." The Court noted that a motion for reconsideration is not provided for under any of the Utah Rules of Civil Procedure, and has never been recognized as a proper motion in this state. *See id.* at 1064. The Court observed that the correct motion under the circumstances would have been a motion for a new trial. Nonetheless, because the effect of the motion for reconsideration was essentially the same as a motion for new trial, *and because the trial court treated it as such*, the Court held that "the incorrect title placed upon the pleading was not a bar to defendant's case." *Id.* In this case, Wades' supplemental statement of objections, though clearly mislabeled, was the functional equivalent of a Rule 60(b) motion to set aside the judgment. The statement was filed in contemplation of Rule 60(b), and contained the same kinds of arguments and assertions one would normally expect to find in a motion to set aside the judgment. Most importantly, the trial court treated it as such a motion.

■ Because trial courts must deal first hand with the parties and the discovery process, they are given broad discretion regarding the imposition of discovery sanctions. *See* Utah R.Civ.P. 37(d). They are also vested with considerable discretion under Rule 60(b) to grant or deny motions to set aside default judgments. *See* Utah R.Civ.P. 60(b). Consequently, we will interfere with the trial court's decision in this case only if an abuse of discretion is clearly shown. *See Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986). We see no abuse of discretion in this instance and affirm the trial court's decisions to vacate the default judgment and, having done so, not to reinstate it.

## SUMMARY JUDGMENT

Darrington also argues that the existence of genuine unresolved issues of material fact should have precluded the trial court from granting Wades' motion for summary judgment. In its ruling on the motion, the court focused almost exclusively on the terms of the lease. The court noted that the lease granted the tenant complete and exclusive control of the property. The court also accepted Darrington's assertion that his injuries were caused by a missing drain cover in one of the runs at the skateboard park.

Because the court saw no evidence that Wades had anything to do with the property after Iverson took possession, it concluded, as a matter of law, that Wades did not

create the condition that caused Darrington's injuries and could not be held liable. The court's ruling, however, assumes that Wades had no duty regarding the condition of the property when they delivered possession to Iverson, just sixteen days prior to Darrington's injury.

In determining whether any genuine issues of material fact remained unresolved, it is first necessary to determine the correctness of the trial court's assumption that Wades either had no duty regarding the condition of their property at the time of delivery, or that they satisfied their duty. The Restatement (Second) of Property indicates that landlords who lease their property for public admission have a higher duty than run-of-the-mill landlords:

> A landlord who leases property for a purpose involving the admission of the public is subject to liability for physical harm caused to persons who enter the leased property for that purpose by a condition of the leased property existing when the tenant takes possession, if the landlord: (1) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to those persons; (2) has reason to expect that the tenant will admit them before the leased property is put in safe condition for their reception; and (3) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect those persons against it.

Restatement (Second) of Property § 17.2 (1977). According to this section, landlords who lease property for a purpose involving public admission have a duty to exercise reasonable care to ensure that the property is in reasonably safe condition when they deliver possession to a tenant. This duty includes inspection, if necessary, and other reasonable efforts to discover and remedy unsafe conditions that might create a reasonably foreseeable risk of harm before delivering possession to a tenant. *See also English v. Kienke*, 774 P.2d 1154, 1156 (Utah Ct.App.1989) (landlords' duty of reasonable care "encompasses care to assure their property is 'reasonably safe and suitable for intended uses' ") (quoting *Stephen-*

*son v. Warner*, 581 P.2d 567, 568 (Utah 1978)). Under the view espoused in the Restatement, this duty is strengthened where the landlord has reason to believe the tenant will open the property to public admission before ensuring the reasonable safety of its condition. Based on this standard, Wades, as owners of property intended to be leased for public admission, had a duty to inspect the property and either take reasonable measures to correct conditions creating a reasonably foreseeable risk of harm, or to ensure that their tenant corrected such conditions before admitting the public onto the property.

As far as we can tell, however, the evidence in this case is insufficient to determine whether Wades satisfied this duty, and, if they failed to do so, whether their actions proximately caused Darrington's injuries. The trial court had before it no evidence indicating what condition the property was in when Iverson took possession. Although the court accepted Darrington's assertions that his injuries were caused by a missing drain cover, and that prior to his injury a drain cover had been missing in another run, the court had before it no basis on which to determine whether a drain cover was missing at the time Iverson took possession of the property. The record seems to suggest that despite their ownership, Wades were not overly familiar with the condition of the property generally, and there is no indication in the record that they inspected the property to ascertain its condition and safety immediately prior to its delivery to Iverson.

Even if Wades breached their duty to inspect and take reasonable measures to ensure the safe condition of the property at the time of delivery, however, they can be held liable only if Darrington's injury was a reasonably foreseeable result of their negligence. Under the applicable standard of care, *see* Restatement (Second) of Property § 17.2 (1977), if the owner of a skateboard park intends to lease his property to a tenant for public admission, the owner is required to at least inspect the property and make reasonable efforts to ensure that conditions creating a reasonably foreseea-

ble risk of harm are corrected before the property is delivered to a tenant who intends to open it to public admission. During the course of such an inspection, a reasonable landowner would notice if one of the skateboard runs had fallen into disuse and become abandoned. The owner would also wonder why. Upon closer inspection, the owner would presumably notice if a drain cover in the bottom of the run was missing and, if it was, conclude that is why the run had been abandoned. A reasonable landowner should also realize that despite an informal abandonment of the run, an unknowing user might attempt to use it and become injured because of the dangerous condition created by the missing drain cover.

While it would of course be less foreseeable that the tenant or a patron might remove a drain cover from another run to replace the missing cover in order to use the abandoned run, thereby leaving the other run in a dangerous condition, the general risk of harm is essentially the same—a skateboarder's plummet into an open drain. As a general rule, to satisfy the foreseeability requirement, "only the general risk of harm need be foreseen, not the specific mechanism of injury." [3] *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 301, 796 P.2d 506, 510 (1990).

In this case, the foreseeability issue boils down to a question of reasonableness. To what extent would a prudent landowner reasonably inspect the premises prior to parting with possession? What would a prudent landowner reasonably do upon discovery of a missing drain cover in the middle of a skateboard run if one was in fact missing at the time of inspection?

Ordinarily, such questions of reasonableness necessarily pose questions of fact which should be reserved for jury resolution and, except in the clearest cases,[4] should not be disposed of by summary judgment. *Williams v. Melby*, 699 P.2d 723, 727–28 (Utah 1985); *Wycalis v. Guardian Title*, 780 P.2d 821, 825 (Utah Ct.App.1989). This is only an aspect of the general rule that "summary judgment should be granted with great caution when negligence is alleged." *See English v. Kienke*, 774 P.2d 1154, 1156 (Utah Ct.App. 1989). Otherwise "far too many issues [would be removed] from the jury's consideration." *Sharp v. W.H. Moore, Inc.*, 118 Idaho at 301, 796 P.2d at 510. Therefore,

> summary judgment is [generally] inappropriate to resolve a negligence claim on its merits, and should be employed "only in the most clear cut case" ... [where] the applicable standard of care is "fixed by law," and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances.... [Any] "doubt or uncertainty as to the questions of negligence ... should be resolved in favor of granting a trial."

*Wycalis*, 780 P.2d at 825 (citations omitted). In this case, the trial court had before it no evidence as to the condition of the property when Iverson took possession. The record also failed to show whether or not Wades inspected the property to ascertain its condition, what a reasonable inspection would have shown, what reasonable corrective measures would properly have been taken, and whether the failure to take corrective action foreseeably contributed to Darrington's injuries. Consequently, the reasonableness of Wades' actions immediately prior to transferring the property remains wholly unresolved, thereby presenting genuine issues of material fact that must be adjudicated before Wades' potential liability can be determined. This is so

---

**3.** For a synopsis of assorted fact situations in which the principle of general foreseeability has been applied, *see generally Moran v. Faberge, Inc.*, 273 Md. 538, 332 A.2d 11, 22–24 (Ct.App. 1975) (O'Donnell, J., dissenting) (discussing eight different cases).

**4.** As a general rule,
   [t]he jury [should be] given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court [should intervene] only when it can say that the actor's conduct clearly meets the standard or clearly falls below it. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 734 P.2d 1326, 1336 (1987) (citations omitted).

notwithstanding the text of the lease governing responsibility for the premises *after* they were transferred to the tenant.

Accordingly, we reverse the summary judgment and remand for a trial on the merits or such other proceedings as may be appropriate in view of this opinion.

BILLINGS and GARFF, JJ., concur.