**DLB COLLECTION TRUST, by HELGESEN & WATERFALL, Trustee, Plaintiff,**

v.

**Gary S. HARRIS; Geneil L. Harris; and Harris–Oneida Investment Company, a Utah corporation, Defendants.**

**HARRIS FAMILY TRUST; Gary S. Harris; and Geneil L. Harris; Third–Party Plaintiffs and Appellant,**

v.

**ESTATE OF Darwin M. LARSEN, Hal R. Jensen; Wesley G. Harline; Rex M. Kohler; Milton R. Goff; and James R. Foulger, Third–Party Defendants and Appellee.**

No. 930474–CA.

Court of Appeals of Utah.

March 22, 1995.

Stephen G. Stoker, Salt Lake City, for appellant.

Jack C. Helgesen and Michael V. Houtz, Ogden, for appellee.

Before BENCH, BILLINGS and WILKINS, JJ.

## OPINION

BILLINGS, Judge:

We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App.P. 29(a)(3).

Third-party plaintiff, the Harris Family Trust (the Trust), appeals the trial court's grant of summary judgment in favor of the Estate of Darwin M. Larsen (the Estate). The trial court ruled as a matter of law that the Trust could not maintain an action against the Estate and that the Trust presented insufficient evidence to create a material issue of fact on its contribution claim. On appeal, the Trust contends the trial court's rulings were in error. The Estate responds that this court lacks jurisdiction over this case. We affirm.

## FACTS

Gary S. Harris (Harris), Darwin M. Larsen (Larsen), and two others were shareholders and directors of Citizen's Bankshares, Inc. (Citizen's Bankshares), the sole shareholder of The Citizens Bank Corporation (the Bank), which operated as Citizens Bank in Ogden, Utah. These four shareholders also created and operated Citizen's Service Corporation (CSC), a separate corporation that borrowed money with personal guarantees from the four shareholders and used it to purchase bad loans at a discount from the Bank.

In 1985, the Bank was closed by the Utah Department of Financial Institutions and its assets were liquidated by the Federal Deposit Insurance Corporation (the FDIC). The FDIC pursued claims against the Bank and its directors and officers, which Larsen subsequently settled.

In 1986, some of the notes to finance CSC were assigned to DLB Collection Trust (DLB). When DLB filed suit against Harris, Harris joined Larsen as a third-party defendant alleging several causes of action, including a contribution claim for payments Harris alleges he made on debts of the Bank and CSC, and a claim that Larsen negligently managed a large real estate transaction that led to the failure of the Bank.

Eventually all of the directors except Larsen filed personal bankruptcy. Larsen died in 1989 and his estate was joined as a party. Prior to filing bankruptcy in 1991, Harris produced an assignment dated April 5, 1987, transferring his cause of action to the Trust.

In 1992, all other parties were dismissed by stipulation and the Estate moved for summary judgment. The Trust conceded dismissal of all causes of action against the Estate except the contribution and negligence claims. At a hearing before Judge David E. Roth on June 17, 1992, the trial court granted the Estate's motion for summary judgment and dismissed all of the Trust's remaining claims. On June 22, the

Trust filed a Motion to Reconsider and a Supplemental Affidavit of Harris. Judge Roth retired before hearing the motion. Judge Glasmann heard the motion on September 1, 1992, and orally denied it, upholding Judge Roth's prior grant of summary judgment in favor of the Estate.

Subsequently, on November 17, 1992, Judge Glasmann entered his final orders, granting the Estate's motion for summary judgment and denying the Trust's motion to reconsider. Neither the Estate nor the Trust were given notice that the court had entered final orders. In November, the Trust scheduled a hearing to argue the form of the findings and orders, which took place on January 6, 1993. At the January hearing, Judge Glasmann informed the parties that he had mistakenly signed the final orders, not realizing that the parties had requested a hearing on the content of the findings. Both parties stipulated that Judge Glasmann could set aside the orders and then reenter them. Both orders were formally reentered on April 5, 1993. The Trust filed its notice of appeal on May 3, 1993.

## JURISDICTION

■ The Estate contends that this court lacks jurisdiction to hear this appeal because the Trust's notice of appeal was not timely filed. The Estate maintains the trial court did not have the authority to set aside and reenter a final order to allow the Trust an opportunity to appeal. We disagree.[1]

At the January hearing, the parties reargued the merits of the Trust's Motion for Reconsideration and the proposed findings of facts. Judge Glasmann chose to stand by his prior findings, but upon stipulation by both parties, agreed to vacate his orders and to reenter them to give the Trust an opportunity to appeal. Despite this stipulation, the Estate now complains of the propriety of Judge Glasmann's actions.[2]

■ It is settled that stipulations are conclusive and binding on the parties, unless good cause is shown for relief. *See Higley v. McDonald,* 685 P.2d 496, 499 (Utah 1984). This court "cannot overlook or disregard stipulations which are absolute and unequivocal. Stipulations of attorneys may not be disregarded or set aside at will." *L.P.S. by Lutz v. Lamm,* 708 F.2d 537, 539 (10th Cir. 1983). We find that having stipulated to the trial court's actions, the Estate may not now complain about them on appeal. *See Leaver v. Grose,* 610 P.2d 1262, 1264 (Utah 1980) (finding that, having stipulated, defendant could not come forward to complain of the trial court's actions on appeal); *Redevelopment Agency v. Mitsui Inv., Inc.,* 522 P.2d 1370, 1372–73 (Utah 1974) (finding that, having stipulated at trial, defendant should not "feel too badly abused" by court's refusal to allow it to renege on its stipulation on appeal). Our conclusion is particularly appropriate because the Estate's stipulation could well have misled the Trust into not exercising its rights under Rule 4 of the Utah Rules of Appellate Procedure.[3]

1. It is axiomatic that "[e]very tribunal has some power to correct its own mistakes." *Clark v. Hansen,* 631 P.2d 914, 915 (Utah 1981) (finding "[i]nherent in the power to make an administrative decision is the authority to reconsider a decision"). Moreover, "[i]t is well established that the court may vacate, set aside, or modify its orders or judgments entered by mistake or inadvertence." *Meagher v. Equity Oil Co.,* 5 Utah 2d 196, 299 P.2d 827, 830 (1956); *accord Rees v. Albertson's Inc.,* 587 P.2d 130, 132 (Utah 1978); *see also* Utah R.Civ.P. 60(b).

2. The Estate argues that its written and oral stipulations are meaningless because a party may not stipulate to provide a court with subject matter jurisdiction when it is otherwise lacking. However, the Estate's stipulation did not purport to cure any possible jurisdictional defects of this

appeal. Rather, the Estate merely agreed that Judge Glasmann could set aside the judgment and order and reenter them at a later date.

3. In part, that rule provides:

> The trial court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed in paragraph (a) of this rule.

Utah R.App.P. 4(e). Judge Glasmann's final orders were entered on November 17, 1992. The parties appeared before the court on January 6, 1993, less than 60 days after the orders were entered. Had the Estate not stipulated to Judge Glasmann's vacation of his prior orders, the Trust could have timely filed a Rule 4(e) motion, preserving its right of appeal.

We therefore conclude that, pursuant to the parties' stipulation, the trial court had the inherent authority and good cause to vacate its prior order and to enter a new one. As a result, this court has jurisdiction to consider this appeal on its merits.

## DERIVATIVE OR INDIVIDUAL RIGHT OF ACTION

■ The Trust contends Larsen negligently supervised and controlled the financial and business affairs of the Bank and related entities, thereby causing the loss the Trust suffered. The Trust argues that the trial court erred when it acknowledged that Larsen was negligent, but determined, as a matter of law, that the claim belonged to the corporation, not the Trust individually.

■ Under Utah law, claims of negligent mismanagement of a corporation may be maintained only as a shareholders' derivative action. *See Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 640 (Utah 1980) (holding "[t]he rule in Utah is that mismanagement of the corporation gives rise to a cause of action in the corporation, even if the mismanagement results in damage to stockholders"); *Morris v. Ogden State Bank*, 84 Utah 127, 140–41, 28 P.2d 138, 143 (1934) (finding mismanagement of corporation could be redressed by corporation, but not in action brought by stockholder individually).

On appeal, the Trust concedes that under *Richardson* and *Morris* it cannot assert a claim against the Estate for the loss of the value of the stock Harris held in Citizen's Bankshares or CSC. Rather, the Trust contends Harris may assert an individual cause of action because Larsen's actions constituted a wrong both to the corporation and to Harris as an individual.

There is a well-recognized exception to the general rule that allows a shareholder to bring an individual cause of action if the harm to the corporation also damaged the shareholder *as an individual rather than as a shareholder*. *See Richardson*, 614 P.2d at

638; *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 883 (Iowa 1983); 12B William Fletcher, *The Law of Private Corporations* § 5920 (rev. ed. 1993). The exception, however, does not arise merely because the acts complained of result in damage both to the corporation and the shareholder; rather, it is confined to cases in which the wrong itself amounts to a breach of duty owed to the shareholder personally. *Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir.1972).

■ Thus, a shareholder may pursue a claim when the wrongful acts are not only against the corporation, but are also violations of a duty arising from a contract or otherwise, and owed directly to the shareholder. *See ITT Diversified Credit Corp. v. Kimmel*, 508 F.Supp. 140, 144 (N.D.Ill.1981); *Zokoych v. Spalding*, 36 Ill.App.3d 654, 344 N.E.2d 805, 813 (1976).

The Trust seeks relief based on Harris's relationship with Larsen as a co-signer and guarantor on millions of dollars of debt Harris incurred as one of the co-owners of CSC.[4] The recent Colorado case, *Nicholson v. Ash*, 800 P.2d 1352 (Colo.Ct.App.1990), is helpful to this court's analysis. In *Nicholson*, the plaintiff contended he had standing to pursue individual claims against the defendants in their capacity as corporate directors because of his personal guaranty of corporate debts. *Id.* at 1353. The plaintiff alleged that in conjunction with his purchase of capital stock in American Bankshares, Ltd. (American), which owned 100% of the stock in American Bank of Commerce (Commerce Bank), he also guaranteed the repayment of a portion of certain loans made to American or Commerce Bank. *Id.* He asserted that the directors of either American or Commerce Bank violated the duty owed him as a stockholder to manage Commerce Bank in a careful and prudent manner. The plaintiff claimed this breach of duty resulted in a personal loss to him on his guaranty that was different from the loss sustained by the

---

4. Accordingly, the causal nexus giving rise to the Trust's claim appears to be as follows: Larsen negligently mismanaged the Bank; the Bank failed and defaulted on its contractual obligations to CSC; and CSC thereafter failed to pay both its debts to Harris and those debts which Harris guaranteed. Based upon CSC's failure to pay on its debts, the Trust contends that Harris suffered a direct and separate injury resulting from Larsen's negligence.

stockholders generally and that he therefore had standing to maintain a personal action. *Id.* at 1356. The trial court dismissed this claim, concluding that the right of action against directors for mismanagement is one that is owned by the corporation itself, and not an individual shareholder. *Id.* at 1354–55.

The court on appeal found that the plaintiff's agreement to guarantee certain debts did not enhance his status as a stockholder, and held that the directors did not owe a fiduciary duty to exercise due care and prudence toward guarantors of corporate debt. *Id.* at 1357. The court therefore rejected the plaintiff's argument that his status as a guarantor gave him standing to assert an individual claim against corporate officers and directors. *Id.* at 1356; *accord Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 641 (9th Cir.1988); *Arctic Contractors, Inc. v. State,* 573 P.2d 1385, 1387 (Alaska 1978); *Adair v. Wozniak,* 23 Ohio St.3d 174, 23 OBR 339, 492 N.E.2d 426, 428–29 (1986); *Weiss v. Northwest Acceptance Corp.,* 274 Or. 343, 546 P.2d 1065, 1070 (1976).

The court delineated several reasons why a stockholder, who is also a guarantor of corporate debt, is precluded from asserting a personal right of action against a third party whose actions have resulted in damage to the corporation. Namely, it is the corporation that has suffered direct injury, and any damage resulting to the stockholder is merely indirect; requiring the claim to be pursued on behalf of the corporation prevents multiplicity of suits by various stockholders; and any proceeds from the litigation will be treated as corporate assets and will be available to satisfy both creditors' and other stockholders' claims. *Nicholson,* 800 P.2d at 1356.

In the instant case, the facts before the trial court on summary judgment are as follows. To finance CSC, Harris individually, or with Larsen or the two other shareholders, entered into a series of obligations by which the parties became obligors and guarantors on millions of dollars of joint debt. When the Bank failed, Harris suffered a number of losses as a result of his status as a shareholder and a joint-guarantor on these debts. However, all of the shareholders in this closely-held corporation suffered in the same manner when they were forced to make good on personal guarantees to finance CSC.

On these facts, we agree with the Colorado Court of Appeal's analysis in *Nicholson* and conclude that this is the precise situation that the law regarding derivative actions was designed to prevent. Both Citizen's Bankshares and CSC were small corporations held by four shareholders who each suffered personal financial loss after the Bank failed. The Trust did not allege that Harris suffered a loss that was unique to him alone. We therefore affirm the trial court's grant of summary judgment in favor of the Estate.

## CONTRIBUTION CLAIM

Finally, the Trust claims a right to contribution from the Estate for payments Harris made in excess of his share on joint debts with Larsen. "*Contribution* is the process by which one person obtains reimbursement from another for a proportionate share of an obligation paid by the first person but for which both are liable." *Gardner v. Bean,* 677 P.2d 1116, 1118 (Utah 1984). To sustain a prima facie claim for contribution, the Trust must produce evidence to establish: (1) that a joint debt existed; (2) that the Trust paid more than its proportionate share of the debt; (3) that the Estate did not pay its proportionate share; and (4) that the Trust paid more than the Estate on the debt. *Id.* at 1118. The trial court found that after six years of litigation, the Trust had neither identified nor presented evidence supporting its claim that it paid more than its proportionate share of any obligation held jointly by both the Trust and the Estate.

The party opposing summary judgment has the duty to "set forth specific facts showing there is a genuine issue for trial." Utah R.Civ.P. 56(e). "[B]are contentions unsupported by any specification of facts in support thereof, raise no material questions of fact as will preclude entry of summary judgment." *Massey v. Utah Power & Light,* 609 P.2d 937, 938 (Utah 1980). In the instant case, the evidence presented on summary judgment and in Harris's supplemental affidavit fails to establish that the Trust paid

more than its proportionate share of the joint debts. Rather, the Trust contends that the burden of going forward with evidence of the amount Larsen paid on joint debts shifts to the Estate. We disagree.[5]

Larsen and Harris were co-obligors or co-guarantors of all of the debts for which the Trust alleges Harris paid more than his proportionate share. Furthermore, from the time its third-party complaint was filed, the Trust had over six years to conduct discovery or to otherwise investigate to determine what amounts Larsen paid on the joint debts.[6] We therefore agree with the trial court that the Trust failed to raise a material issue of fact as to whether it paid more than its share of the joint obligations.

### CONCLUSION

We conclude the Trust failed to illustrate that Harris suffered a distinct injury, separate from his status as a shareholder, and therefore failed to state an individual claim against the Estate for Larsen's negligence. Further, we find that the Trust failed to provide sufficient evidence to create a material issue of fact on its contribution claim. Therefore, we affirm the trial court's grant of summary judgment in favor of the Estate.

WILKINS, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur with the main opinion's treatment of the jurisdiction issue and the contribution claim. I respectfully dissent, however, from the main opinion's treatment of the negligence claim against Larsen.

Harris's claim as a guarantor on a corporate debt is not, as a matter of law, a claim that may be maintained only as a shareholder's derivative action. Harris's status as a guarantor gave him individual standing to assert a claim against Larsen because, unlike other shareholders, Harris was personally liable on the debt. I would therefore reverse the summary judgment and allow Harris's predecessor to proceed with its negligence claim.

knowledge and competence of one of the parties, principles of fairness require that party to bear the burden of going forward with evidence on the issue"). These cases are easily distinguishable.

---

5. The Trust relies on several cases from neighboring jurisdictions to support its contention. *See Morris v. Williams*, 67 Cal.2d 733, 63 Cal. Rptr. 689, 707, 433 P.2d 697, 715 (1967) (holding that "[a]lthough a plaintiff ordinarily has the burden of proving every allegation of the complaint, ... [w]here the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence"); *Pace v. Hymas*, 111 Idaho 581, 726 P.2d 693, 697 (1986) (stating "[i]t is the general rule that where evidence necessary to establish a fact lies peculiarly within the

6. Finally, the Trust maintains that the trial court's finding that the Affidavit of Karen Larsen was admissible was in error. We conclude that the trial court did not err and find that this affidavit comports with all the requirements of Rule 56(e) of the Utah Rules of Civil Procedure and Rule 602 of the Utah Rules of Evidence.