2005 UT App 433

**John A. DAHLSTROM, Plaintiff and Appellant,**

v.

**Nicholas J. NASS, Defendant and Appellee.**

No. 20040984–CA.

Court of Appeals of Utah.

Oct. 14, 2005.

Brent Gordon, Driggs Bills & Day PC, Salt Lake City, for Appellant.

Michael J. Walk and Michael L. Ford, Kidman & Associates, Salt Lake City, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and THORNE, Jr., J.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Plaintiff John Dahlstrom appeals the trial court's grant of Defendant Nicholas Nass's motion for a directed verdict pursuant to rule 50 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 50. We affirm.

## BACKGROUND

¶ 2 Nass owns two buildings adjacent to one another on Main Street in Park City,

Utah. From approximately 1991 to September 2000, Nass owned and operated the Main Street Photography Store (Photo Store) in one of the buildings. In September 2000, Nass sold the Photo Store business to Jim Maire and Colin Kelly. Maire and Kelly had been employees of Nass at the Photo Store until they purchased the business. Nass continued to own the building but leased the space to Maire and Kelly for operation of the Photo Store.

¶ 3 Nass leased the other building to Barbara and Mike Lindbloom (the Lindblooms) in approximately 1983 for the operation of the Main Street Deli (the Deli). The Lindblooms have leased the building from Nass since that time and continue to operate the Deli.

¶ 4 Nass's leases with both Maire and Kelly and the Lindblooms provide that the tenants are responsible for "all routine building maintenance." Maire testified at trial that he understood this to include snow and ice removal from the sidewalk in front of the Photo Store. Nass also testified that under both lease agreements, the tenants were responsible for snow and ice removal in front of the buildings.

¶ 5 On December 6, 2000, Dahlstrom and his son were walking in front of Nass's buildings when Dahlstrom slipped on ice or snow and fell, fracturing his hip. Nearly two years later, Dahlstrom filed a complaint against Nass for negligence and public nuisance for failing to remove snow and ice from the sidewalk in front of his buildings.

¶ 6 A jury trial was held on October 5, 2004. At the close of Dahlstrom's case, Nass moved for a directed verdict, which the trial court granted. Dahlstrom appeals.

ISSUE AND STANDARD OF REVIEW

¶ 7 Dahlstrom argues that the trial court erred by granting Nass's motion for a directed verdict. "We review a trial court's grant of directed verdict for correctness. For a directed verdict to be appropriate, the evidence must be such that reasonable minds could not differ on the facts based on the evidence presented at trial." *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 10, 104 P.3d 1185. A trial court commits reversible error by granting a motion for a directed verdict if the evidence raises a question of material fact. *See Mahmood v. Ross*, 1999 UT 104, ¶ 16, 990 P.2d 933.

ANALYSIS

¶ 8 Dahlstrom asserts that the trial court erred by determining there was no evidence that Nass owed a legal duty to Dahlstrom. Specifically, Dahlstrom argues that because the determination of whether a legal duty exists is a question of law, Dahlstrom "does not have the capacity to establish a legal duty . . .; [r]ather, it is the court's responsibility to determine whether a legal duty exists or not." However, "[i]t is well settled that in order to recover under a negligence claim, a plaintiff must establish that 'the defendant owed the plaintiff a duty, defendant breached the duty (negligence), the breach of that duty was the proximate cause of plaintiff's injury, and there was in fact injury.'" *Cannon v. University of Utah*, 866 P.2d 586, 588 (Utah Ct.App.1993) (citations omitted). Accordingly, to succeed on his negligence claim, Dahlstrom must first demonstrate that Nass owed him a duty of care. *See id.*

¶ 9 The trial court held that Nass did not owe a legal duty to Dahlstrom because Nass transferred possession of the buildings prior to Dahlstrom's fall. We agree.

¶ 10 Because Nass transferred possession of both buildings prior to Dahlstrom's fall, Nass is not subject to liability. Our supreme court has held that "it is the *tenant who is liable* for any dangerous condition on the premises which he creates or permits to come into existence *after he has taken possession.*" *Stephenson v. Warner*, 581 P.2d 567, 568–69 (Utah 1978) (emphases added); *see also* Restatement (Second) of Torts § 355 ("[A] lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee . . . for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."). There was no evidence presented at trial suggesting that ice or snow existed at the time Nass transferred posses-

sion of both the Photo Store and the Deli. Furthermore, both Maire and Nass testified that under the leases, the tenants were responsible for "all routine building maintenance" including ice and snow removal.

 ¶ 11 However, Dahlstrom argues that because Nass's buildings were leased for a purpose involving public admission, Nass owes "a higher duty than run-of-the-mill landlords." *Darrington v. Wade*, 812 P.2d 452, 458 (Utah Ct.App.1991). While this is an accurate statement of the law, it does not apply when there is no evidence suggesting that the condition existed at the time possession was transferred. *See id.* As we have previously stated,

> landlords who lease property for a purpose involving public admission have a duty to exercise reasonable care to ensure that the property is in reasonably safe condition *when they deliver possession to a tenant.* This duty includes inspection, if necessary, and other reasonable efforts to discover and remedy unsafe conditions that might create a reasonably foreseeable risk of harm *before delivering possession to a tenant.*

*Id.* (emphases added).

¶ 12 Any ice or snow that may have existed on the sidewalk in front of Nass's buildings when Dahlstrom fell was due to a temporary dangerous condition that came into existence after the tenants had taken possession.

 ¶ 13 Dahlstrom argues melting snow and ice occurred every winter and had occurred before Nass transferred possession. He further claims that a ditch on a neighbor's property exacerbated the problem and was present before Nass transferred the property. Nass had no duty to remedy a condition on his neighbor's property. Further, the seasonal problems with snow and ice are not the sort of permanent dangerous and unsafe conditions contemplated by the public admission doctrine. *See Fountain v. D'Addario Indus., Inc.*, No. CV89–0261424–S, 1991 WL 277353, at *4, 1991 Conn.Super. LEXIS 3095, at *10 (Conn.Super.Ct. December 17, 1991) (holding that "the mere pres-

ence of snow and ice on some portion of the premises does not necessarily constitute a dangerous condition" and refuting plaintiff's argument that landlord should be held liable under the public use exception for icy parking lot where "he knew or should have known that a portion of the demised premises would become covered with snow and ice in the winter months"). Thus, Dahlstrom failed to demonstrate that Nass owed him a duty, and as such, his claim fails. Accordingly, we affirm.[1]

## CONCLUSION

¶ 14 Because Dahlstrom failed to establish that Nass owed him a duty of care, the trial court properly granted Nass's motion for a directed verdict pursuant to rule 50 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 50. Accordingly, we affirm.

¶ 15 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.

---

1. Because we affirm on the trial court's first ground for granting the rule 50 motion, *see* Utah R. Civ. P. 50, it is unnecessary to address Dahlstrom's alternative arguments.