2000 Utah Ct. App. 139

**Fred K. STOCKS and Brenda K. Stocks, Plaintiffs and Appellants,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation; and the Talbert Corporation, a corporation, Defendants and Appellees.**

No. 990624–CA.

Court of Appeals of Utah.

May 11, 2000.

Anthony R. Martineau and Ray G. Martineau, Salt Lake City, and Leslie W. Slaugh, Howard Lewis & Petersen, Provo, for Appellants.

Gary L. Johnson, Richards Brandt Miller & Nelson and Michael L. Deamer, Randle Deamer Zarr McConkie & Lee, Salt Lake City, for Appellees.

Before Judges GREENWOOD, JACKSON, and BILLINGS.

## OPINION

BILLINGS, Judge:

¶1 Plaintiffs Fred and Brenda Stocks (Stocks) appeal the trial court's grant of sum-

mary judgment in favor of defendants United States Fidelity & Guaranty Corporation ("USF & G") and the Talbert Corporation (Talbert). We affirm.

## BACKGROUND

¶ 2 "[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *McNair v. Farris*, 944 P.2d 392, 393 (Utah Ct.App.1997). We recite the facts accordingly.

¶ 3 In May 1992, Timber Products, Inc. (TPI), a company owned by the Stocks, entered into a contract with members of the Paul Redd family (Redds) to harvest certain timber on land owned by the Redds in southern Utah. The contract required that TPI obtain liability insurance and that TPI pay for any fire damage caused by its logging operations. TPI purchased a commercial general liability insurance policy issued by USF & G through Talbert, an independent insurance agency.

¶ 4 On June 14, 1994, a forest fire occurred on the Redds' land. The Redds and San Juan County claimed the fire was negligently started by an employee of an independent logging contractor who was harvesting timber for TPI on the Redds' land, and claimed damages from TPI under the logging contract. No claims were asserted against the Stocks personally. TPI requested that USF & G provide defense and indemnity for these claims under its insurance contract. USF & G denied coverage for the claims made by the Redds and San Juan County. The denial of coverage was based on a provision in the insurance policy, Endorsement CG2254, which stated in relevant part: "With respect to logging and lumbering operations by or for you, this insurance does not apply to property damage due to fire".

¶ 5 In December 1994, TPI filed a complaint for declaratory relief against the Redds, USF & G, and Talbert, as well as the subcontractor whose employee was allegedly responsible for the fire and the subcontractor's insurance companies. That suit, entitled *Timber Products, Inc. v. Redd* (*Timber Products* suit), is currently pending in the Seventh Judicial District Court, with trial set for September 2000. The Stocks are not named parties in that suit.

¶ 6 In December 1996, TPI filed motions seeking to add the Stocks as individual plaintiffs in the *Timber Products* case. The court ruled that TPI's motions were untimely and that Utah law prohibits a shareholder of a corporation from bringing suit in his individual capacity as a shareholder for the wrong done to the corporation by a third party. TPI filed an interlocutory appeal from that ruling, but the Utah Supreme Court denied the appeal. The Stocks then filed this action against USF & G and Talbert. The Stocks claim damages from USF & G for the Stocks' expenses from funding TPI's litigation costs in the *Timber Products* case as a result of USF & G's denial of coverage to TPI. The Stocks claim damages from Talbert for having breached its duty to provide proper insurance coverage. The Stocks claim damages from both defendants for the Stocks' mental and emotional distress, which they claim to have suffered from having to fund TPI's litigation costs.

¶ 7 On February 22, 1999, the trial court granted USF & G's and Talbert's motions for summary judgment, ruling that the Stocks lacked standing in their individual capacities to bring suit as their claims against both defendants are entirely derivative of the claims against their corporation, TPI. The Stocks appeal this dismissal.

¶ 8 Meanwhile, in the *Timber Products* case, TPI and USF & G filed cross motions for summary judgment on the enforceability of the fire damage exclusion in the insurance policy. On February 18, 1999, the court ruled that the provision was unambiguous and enforceable and excluded coverage for property damage from the 1994 fire. The court further ruled that USF & G had no duty to defend TPI with respect to the claims arising from the fire.[1]

---

1. As a threshold matter, USF & G argues that the Stocks' claims are moot. USF & G claims the *Timber Products* court's February 18, 1999 ruling

granting summary judgment to USF & G on the ground that USF & G had no duty to defend TPI disposes of the Stocks' claims in this case. How-

## ISSUES AND STANDARD OF REVIEW

¶ 9 The Stocks assert they have standing to recover their personal damages from funding TPI's defense costs and their emotional distress damages from Talbert and USF & G. "Whether a plaintiff has standing is a question of law and we accord no deference to the ruling of the trial court." *West Valley City Fraternal Order of Police Lodge # 4 v. Nordfelt*, 869 P.2d 948, 950 (Utah Ct.App. 1993).

## ANALYSIS

¶ 10 To have standing, a plaintiff "must be able to show that he has suffered some distinct and palpable injury." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983); *see also Kennecott Corp. v. Salt Lake County*, 702 P.2d 451, 454 (Utah 1985). USF & G and Talbert argue that the Stocks' alleged injuries all arise from alleged damages to the corporation, TPI, and are thus too indirect and derivative to support the Stocks' individual claims.

█ ¶ 11 It is well-settled that "even though a shareholder owns all, or practically all, of the stock in a corporation, such a fact does not authorize him to sue as an individual for a wrong done by a third party to the corporation." *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1031–32 (Utah 1979) (footnote omitted). However, this court has recognized a narrow exception to the general rule regarding a shareholder's capacity to bring an individual suit. A shareholder may "bring an individual cause of action if the harm to the corporation also damaged the shareholder *as an individual rather than a shareholder.*" *DLB Collection Trust v. Harris*, 893 P.2d 593, 598 (Utah Ct.App.1995). This exception applies to cases in which the wrong itself is a "violation of a duty arising from a contract or otherwise, and owed directly to the shareholder." *Id.* Thus, in this case the exception would

apply if the alleged wrongful conduct of USF & G and Talbert is a "violation of a duty arising from a contract or otherwise" with the Stocks, and "owed directly" to the Stocks. *Id.*

¶ 12 In *DLB*, this court rejected the assertion of standing by a stockholder who was also a guarantor of corporate debt against a third party whose actions damaged the corporation. *See id.* Harris, an individual shareholder and guarantor, sued Larsen, a fellow shareholder and guarantor, for contribution for payments Harris allegedly had made to cover corporate debts. *See id.* at 594. Harris claimed Larsen's actions constituted a wrong both to the corporation and to Harris as an individual guarantor. *See id.* at 596. Harris sought relief based on his relationship with Larsen as co-signer and guarantor for debt Harris incurred when the corporation failed to pay its debts. *See id.*

¶ 13 This court concluded that "Harris suffered ... losses as a result of his status as a shareholder and joint-guarantor on [the corporate] debts." *Id.* at 597. We noted, "it is the corporation that has suffered direct injury, and any damage resulting to the stockholder is merely indirect". *Id.* (citing *Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo.Ct. App.1990)). Therefore, we rejected Harris's argument that he had suffered a unique and individual injury.

█ ¶ 14 Similarly, in this case the Stocks have failed to allege any distinct injury, separate from their status as shareholders of TPI. In support of their claim of distinct injury, the Stocks allege the following facts: 1) TPI is a small business of which the Stocks are the sole shareholders, directors, officers and agents; 2) the Stocks have had to personally guarantee TPI's debts; 3) the Stocks financed TPI's defense in the *Timber Products* case out of their own pockets; and 4) USF & G's and Talbert's conduct has inflicted mental and emotional distress on the Stocks.

ever, the litigants here are the Stocks, who are not named parties to the *Timber Products* suit. Although the interests of the Stocks may overlap with those of TPI, on the record before us we cannot conclude that those interests are so identical that a ruling against TPI must render the Stocks' claims moot. *See Murdock v. Springville Mun. Corp.*, 1999 UT 39, ¶ 13, 982 P.2d 65 (hold-

ing summary judgment inappropriate if impossible to determine whether party was party or privy to previous adjudication). Furthermore, the ruling relied upon by USF & G is interlocutory as the *Timber Products* case is still pending before the trial court. *See id.* at ¶¶ 16, 18 (requiring final judgment on merits).

¶ 15 The *Timber Products* suit does not involve a breach of duty owing to the Stocks as insureds. Instead, the duties to provide the insurance requested and to defend and indemnify allegedly breached by USF & G and Talbert were owed to the corporation, TPI. Although the Stocks are named insureds and thus have a contractual relationship with USF & G, this does not bring them within the exception to the general rule limiting shareholder standing. The Stocks have not made a personal claim for insurance coverage, nor could they. The Stocks were not named in the *Timber Products* suit; they face no individual exposure. *See S.W. Jordan v. United States Fid. & Guar. Co.*, 843 F.Supp. 164, 175 (S.D.Miss.1993). Thus, their individual insurance coverage is irrelevant in this case. The fact that the Stocks own substantially all the stock of TPI is not helpful. *See Norman*, 596 P.2d at 1031–32.

¶ 16 Moreover, the Stocks' personal funding of TPI's defense is a result of damage inflicted on the corporation by defendants' alleged wrongful denial of insurance coverage. Thus, their injuries have only arisen derivatively from the damage suffered by the corporation. *See DLB*, 893 P.2d at 597. Such indirect injury cannot confer standing on the Stocks as individuals.

¶ 17 Finally, the Stocks' claim of emotional distress does not give them standing. Their distress has arisen as a result of the damage to TPI, not as a direct result of any breach or damage to the Stocks personally. *See id.; see also Kush v. American States Ins. Co.*, 853 F.2d 1380, 1383 (7th Cir.1988). Furthermore, the Stocks were not insured for emotional distress damages. Thus, we conclude that the Stocks may not maintain an action against USF & G or Talbert. We therefore affirm the trial court's dismissal of their claims.

¶ 18 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and NORMAN H. JACKSON, Associate Presiding Judge.