2011 UT 83

**STONE FLOOD AND FIRE RESTORA-TION, INC., James K. Stone and Patrice Stone, Plaintiffs and Appellants,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Appellee.**

No. 20100175.

Supreme Court of Utah.

Dec. 30, 2011.

L. Rich Humpherys, Karra J. Porter, Sarah E. Spencer, Salt Lake City, for plaintiff.

Matthew L. Lalli, Troy L. Booher, J. Elizabeth Haws, Salt Lake City, for defendant.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 In 2000, a fire destroyed a business location of Stone Flood and Fire Restoration

Inc., spurring years of litigation with its insurer, Safeco Insurance Company of America. After Stone Flood and its two shareholders, James and Patrice Stone, sued Safeco in 2007, the district court dismissed all claims against Safeco. The court concluded that Stone Flood's claims on the insurance policy were filed three days beyond the applicable statute of limitations and were therefore barred. As to the Stones, the court held that they were not insureds and lacked standing to bring individual claims under the policy. It also held that they lacked standing to bring a claim of intentional infliction of emotional distress because their alleged injuries were merely derivative of the corporation's. On appeal, Stone Flood and the Stones ask us to reverse the district court's grant of summary judgment.

¶ 2 After reviewing the district court's application of the relevant statute of limitations, we conclude that its calculation of the tolling of the limitations period was incorrect and that a correct calculation saves Stone Flood's claims under the insurance policy. As to the Stones' claims, however, we affirm the district court's grant of summary judgment. It properly concluded that the Stones were not insureds and lacked standing to sue under the insurance policy, and that their claim of intentional infliction of emotional distress failed for lack of a distinct, non-derivative injury. We therefore reverse in part and affirm in part the district court's grant of summary judgment.

## BACKGROUND

¶ 3 A fire broke out at Stone Flood's Utah County location on November 16, 2000, and continued into the next day. The blaze destroyed Stone Flood's office equipment, supplies, inventory, vehicles, personal property, and most of its building.

¶ 4 On November 17, Stone Flood's owners, James and Patrice Stone, gave notice of the fire damage to Safeco, which had issued Stone Flood a comprehensive commercial insurance policy. The Stones told Safeco's insurance adjuster that they needed money immediately to cover upcoming payroll and other business expenses. According to the

Stones, Safeco did not immediately tender payment under the policy, but instead made accusations of arson even though city and state fire marshals had ruled out arson as the fire's cause.

¶ 5 After conducting an investigation into the fire, Safeco made a payment of $25,000 to Stone Flood on December 4, 2000. In return for the payment, Safeco required that the Stones sign a non-waiver agreement in which Safeco declared it was not waiving its right to deny coverage under the policy and that it needed to investigate the loss further. James Stone signed the non-waiver agreement on the line for "Named Insured," and Patrice Stone signed on the line for "Spouse." Safeco ultimately made payments to Stone Flood under the policy totaling $225,000 within twelve weeks of the fire, $1 million within seven months of the fire, and $1.17 million within ten months of the fire.

¶ 6 A series of lawsuits ensued and were principally based on allegations that Safeco delayed payments under the insurance policy, which resulted in Stone Flood's and the Stones' financial collapse. On November 15, 2002, Stone Flood sued Safeco for wrongful conduct and sought additional payments under the policy, consequential damages for delayed payment, and punitive damages. The district court eventually dismissed Stone Flood's lawsuit without prejudice for failure to prosecute. About a year later, the Stones filed a lawsuit in their personal capacity against Safeco alleging intentional infliction of emotional distress and breach of contract. This lawsuit also was later dismissed without prejudice.

¶ 7 During much of this time, Stone Flood and Safeco engaged in an appraisal of the damage to Stone Flood's property. The insurance policy contains a provision stating, in relevant part, "If [Safeco] and [Stone Flood] disagree on the amount of Net Income and operating expenses or the amount of loss, either party may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser." Safeco sent Stone Flood a letter invoking this provision on February 3, 2003, shortly after it answered the complaint filed

in Stone Flood's first lawsuit. Safeco then filed an unopposed motion for the court to order an appraisal and stay the litigation, which the court did on July 11, 2003. Consistent with the insurance policy, the parties selected their respective appraisers. On January 9, 2007, the appraisers issued a written opinion, which concluded that Safeco had paid all but $39,571 owed under the policy within ten months of the fire.

¶ 8 Stone Flood then filed a second lawsuit against Safeco on May 22, 2007, alleging breach of contract, breach of the covenant of good faith and fair dealing, breach of statutory duties under the insurance code, misrepresentation and fraud, deceptive advertising, and negligent misrepresentation.[1] The complaint was later amended to add the Stones as individual plaintiffs alleging the same causes of action, as well as intentional infliction of emotional distress. Safeco moved for summary judgment, arguing that the claims by Stone Flood were barred under Utah Code section 31A–21–313(1), which provides a three-year limitations period on "action[s] on a written policy or contract of first party insurance." Additionally, Safeco argued that the Stones lacked standing to bring their contract and intentional infliction of emotional distress claims.

¶ 9 The district court granted Safeco's motion for summary judgment. As to Stone Flood's claims on the insurance policy, the court concluded that the limitations period began to run on November 1617, 2000, the date of the fire. The court tolled the limitations period during the time in which Safeco and Stone Flood conducted an appraisal of the loss, as provided in Utah Code section 31A–21–313(5). It calculated this tolling period as occurring between July 11, 2003, and January 9, 2007—the time that elapsed between the date of the court's appraisal order in Stone Flood's first lawsuit and the date the appraisers submitted a written decision. Accounting for the appraisal tolling period, the court determined that 1,098 days had elapsed between the date of the fire and the date Stone Flood filed its lawsuit, which was

three days beyond the three-year (1,095–day) limitations period for claims on first-party insurance contracts.

¶ 10 As to the Stones, the court dismissed their contract claims because they were not named insureds under the Safeco policy and thus lacked standing. The court rejected the Stones' argument that they had become insureds after signing the non-waiver agreement, in which they agreed that Safeco was not waiving its right to ultimately deny coverage by making an initial payment under the policy.

¶ 11 The court also held that although a material issue of fact precluded summary judgment on the Stones' claim of intentional infliction of emotional distress, they lacked standing to assert such a claim under the reasoning set forth in *Stocks v. United States Fidelity & Guaranty Co.*, 2000 UT App 139, 3 P.3d 722. In *Stocks*, the Utah Court of Appeals held that "[a] shareholder may bring an individual cause of action if the harm to the corporation also damaged the shareholder *as an individual rather than a shareholder*" *Id.* ¶ 11 (internal quotation marks omitted). The district court concluded that the Stones, as shareholders of Stone Flood, alleged emotional distress that had "arisen derivatively from the damage suffered by the corporation" because they had argued the distress was "caused by Safeco's alleged failure to make timely payments ... for Stone Flood's losses and the resulting collapse of Stone Flood."[2]

¶ 12 Stone Flood and the Stones appealed the court's order granting summary judgment. We have jurisdiction under section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

■ ¶ 13 Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). "We review a district court's grant of summary judgment for correctness

---

1. Only Stone Flood's contract claims under the insurance policy are at issue on appeal.

2. Only the Stones' contract and intentional infliction of emotional distress claims are at issue on appeal.

and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539.

## ANALYSIS

¶ 14 The appellants have placed two issues squarely before us. First, we must decide whether the district court erred when it held that a three-year statute of limitations barred Stone Flood's contract claims under the insurance policy. Second, we must review the district court's ruling that the Stones lacked standing to pursue claims under the policy as well as a claim for intentional infliction of emotional distress.

¶ 15 On the first issue, we hold that the district court erroneously calculated the time that elapsed under the limitations period. The district court started the tolling on July 11, 2003, the date of the court's appraisal order. This was error. The tolling period began February 3, 2003, when Safeco sent a written demand to Stone Flood expressing its intent to invoke an appraisal of the loss under the policy. Under this calculation, Stone Flood's contract claims under the policy are not barred, and we therefore reverse.

¶ 16 On the second issue, we agree with the district court that the Stones were not named insureds and therefore lacked standing to bring contract claims under the insurance policy. We take this opportunity to further develop the principles set forth in *Stocks v. United States Fidelity & Guaranty Co.*, 2000 UT App 139, 3 P.3d 722, regarding shareholder standing. After addressing these principles, we affirm the district court's holding that the Stones lacked standing to pursue a claim of intentional infliction of emotional distress because their alleged injuries are merely derivative of the corporation's.

## I. THE DISTRICT COURT ERRONEOUSLY CALCULATED THE APPRAISAL TOLLING PERIOD

¶ 17 Stone Flood appeals the district court's ruling that it filed its claims based on the Safeco insurance policy three days after the expiration of the relevant statute of limitations. It argues that the court erred by starting the tolling period on July 11, 2003, the date the court entered an order of appraisal. Stone Flood instead proposes that the tolling period began on February 3, 2003, the date Safeco sent it a letter indicating its intent to invoke the insurance policy's appraisal provision.[3] We agree.

¶ 18 Analysis of this question requires us to interpret Utah Code section 31A–21–313 and provisions of the Safeco insurance policy. "When faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the Legislature." *State v. Parduhn*, 2011 UT 56, ¶ 21, —— P.3d ——, 2011 WL 4447619 (internal quotation marks omitted). "To discern legislative intent, we first look to the plain language of the statute," *id.*, and "[w]e presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning," *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 21, 266 P.3d 751 (internal quotation marks omitted). Our approach to

---

**3.** On appeal, Stone Flood argues that the district court made other miscalculations that would also save its causes of action under the limitations period. For example, the limitations period begins to run at "the inception of the loss," UTAH Code Ann. § 31A–21–313(1) (Supp.2011), which the district court determined to be the date of the fire. Stone Flood argues that for claims of breach of the covenant of good faith and fair dealing, the inception of the loss would be the date that an insurer engaged in bad faith, not the date of the physical loss under the policy. It further asserts that the limitations period should have been tolled for sixty days under Utah Code sections 31A–21–313(4)(a) and 78B–2–112. According to Stone Flood, section 31A–21–313(4)(a)

forced it to wait at least sixty days to bring its complaint against Safeco, and section 78B–2–112 provides that "[t]he duration of an injunction or statutory prohibition which delays the filing of an action may not be counted as part of the statute of limitations." Finally, Stone Flood contends that its claims expressly fell within an alleged tolling agreement between the parties or, alternatively, that the tolling agreement presents a disputed issue of material fact precluding summary judgment.

We decline to address these issues because our determination that the district court erred when it calculated the appraisal tolling period is dispositive.

interpreting the language of a contract is similar in that we seek to "ascertain the intentions of the parties" using the plain language of the contract. *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2011 UT 49, ¶ 13, 266 P.3d 733 (internal quotation marks omitted).

¶ 19 Utah Code section 31A–21–313 governs causes of actions based on first-party insurance contracts. Its first subsection provides that "[a]n action on a written policy or contract of first party insurance shall be commenced within three years after the inception of the loss." UTAH Code Ann. § 31A–21–313(1) (Supp.2011).[4] This limitations period, however, "is tolled during the period in which the parties conduct an appraisal or arbitration procedure prescribed by the insurance policy, by law, or as agreed to by the parties." *Id.* § 31A–21–313(5).

¶ 20 The language of this tolling statute is clear. It requires us to determine the particularities of the "appraisal ... procedure prescribed by the insurance policy" issued to Stone Flood. *Id.* The insurance policy states, in relevant part, "If [Safeco] and [Stone Flood] disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser." It goes on to describe further aspects of the appraisal procedure. For instance, the appraisers must select an umpire, who will decide differences of opinion between the appraisers. Additionally, the policy states that each party will pay for its appraiser and "[b]ear the other expenses of the appraisal and umpire equally."

¶ 21 This contractual provision provides the procedure by which the parties conduct an appraisal, as referenced in the tolling statute. The provision prescribes that one party may invoke an appraisal by "written demand for an appraisal of the loss." It then immediately states that, "[i]n *this event*, each party will select a competent and impartial appraiser." (Emphasis added.) In other words, the written demand for an appraisal of the loss is the "event" that triggers the appraisal procedure outlined in the insurance policy.

¶ 22 Under this analysis, we conclude that the triggering event for the policy's appraisal procedure occurred on February 3, 2003, when Safeco issued Stone Flood a written demand invoking the policy's appraisal procedure. In its memorandum in support of its motion for a court-ordered appraisal, Safeco quoted the insurance policy's appraisal provision and represented to the district court that "[p]ursuant to the terms and conditions of the policy, on February 3, 2003[,] [Safeco] sent a letter to [Stone Flood's] attorney making a *written demand for an appraisal of the loss.*" (Emphasis added.) By Safeco's own admission, it issued a written demand to Stone Flood invoking the policy's appraisal provision. The February 3,2003 letter was the triggering event under the policy and began the appraisal procedure prescribed by the policy.[5]

¶ 23 Safeco interprets the statutory tolling provision differently. Under Safeco's interpretation, the operative word in the statutory provision is "conduct" because "the period of limitation is tolled during the period in which the parties *conduct* an appraisal or arbitration procedure prescribed by the insurance policy." UTAH Code Ann. § 31A–21–313(5)

4. Because there have been no substantive changes to the statutory provisions at issue in this appeal, we cite to the most recent versions for convenience.

5. The February 3, 2003 letter was not included in the record on appeal. Safeco contends that the letter does not meet the requirements for supplementation under Rule 11(h) of the Utah Rules of Appellate Procedure, yet both parties attached the letter as addenda to their appellate briefs. Safeco asserts that the "only purpose in attaching the letter is to inform the court as to what evidence would be presented to the district court

in the event of a remand to determine when the tolling period began."

We see no reason to remand this issue to the district court. Because Safeco characterized the February 3 letter as a "written demand for an appraisal of the loss" in its memorandum to the district court, the specific contents of the letter are not dispositive. Additionally, we have reviewed the letter and have concluded that Safeco's original characterization of it as a "written demand" is accurate and belies Safeco's current characterization of the letter as merely a "request" for appraisal.

(emphasis added). According to its interpretation, the "earliest the parties could have been 'conducting' an appraisal . . . was January 2004," after Stone Flood selected its appraiser and the parties' appraisers were then able to *conduct* an appraisal. This interpretation is unpersuasive.

¶ 24 Safeco's interpretation ignores integral parts of Utah Code section 31A–21–313(5). The statute provides that the limitations period is "tolled during the period in which the parties conduct an appraisal or arbitration *procedure* prescribed by the insurance policy." *Id.* (emphasis added). We agree with Stone Flood that the term "procedure" applies to both antecedent words "appraisal" and "arbitration" and Safeco has not challenged that plain language interpretation. Instead, it contends that an appraisal can be conducted only after appraisers have been appointed. That may be true, but it is ultimately irrelevant. Under the statute, the tolling period does not begin with the appraisal itself; it begins when the parties "conduct an appraisal . . . *procedure* prescribed by the insurance policy." *Id.* (emphasis added). Safeco's interpretation requires that we ignore the term "procedure" and the details of the procedure prescribed by the policy. Our approach to statutory interpretation presumes that the legislature used each term advisedly, whereas Safeco would have us focus on one word at the expense of others.

¶ 25 Because the letter was a "written demand for an appraisal of the loss" and triggered the appraisal procedure under the policy, February 3, 2003, marked the beginning of "the period in which the parties conduct[ed] an appraisal . . . procedure prescribed by the insurance policy." Using that date as the beginning of the tolling period, Stone Flood's claims based on the insurance policy fall well within the three-year limitations period. We therefore reverse the district court's dismissal of Stone Flood's contract claims.

## II. THE STONES LACK STANDING TO PURSUE THEIR CONTRACT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS

¶ 26 The Stones argue that the district court erred when it dismissed their personal claims for lack of standing. The district court determined that the Stones had no standing to pursue claims on the insurance policy because they were not named insureds. It further concluded that the Stones, as shareholders of Stone Flood, lacked standing to pursue a claim of intentional infliction of emotional distress under the Utah Court of Appeals' analysis in *Stocks v. United States Fidelity & Guaranty Co.,* 2000 UT App 139, 3 P.3d 722. We affirm both of the district court's rulings, as discussed below.

### A. Contract Claims

¶ 27 The district court dismissed the Stones' contract claims because "they are not insureds under the insurance policy with Safeco." On appeal, the Stones argue that Safeco treated them as insureds by requiring them to sign a non-waiver agreement, which transformed them into "de facto insureds" under the policy. We disagree.

¶ 28 Only an insured may sue for a breach of contract in the first-party insurance setting. *See Sperry v. Sperry,* 1999 UT 101, ¶ 7, 990 P.2d 381 ("Utah law clearly limits the duty of good faith to first parties to insurance contracts. Consequently, only a first party can sue for breach of that duty."). This is due to the simple rule that duties under a contract run to the parties of the contract. *See City of Grantsville v. Redev. Agency,* 2010 UT 38, ¶ 14, 233 P.3d 461 ("And with the exception of those who are third-party beneficiaries or assignees, only those who are a party to a contract have a legally protectable interest in that contract."); *see also Sobh v. Am. Family Ins. Co.,* 755 F.Supp.2d 852, 855 (N.D.Ohio 2010) ("Stated more simply, a contract is only binding on those who are parties to it."); *Pike v. N.Y. Life Ins. Co.,* 72 A.D.3d 1043, 901 N.Y.S.2d 76, 82 (N.Y.App.Div.2010) ("Only the policy owner has standing to sue based on an insurance policy.").

¶ 29 The Stones concede that they are not named insureds under the Safeco policy. Nonetheless, they argue that their signatures

as "Named Insured" and "Spouse" on the non-waiver agreement converted them into "de facto insureds" under the policy. In support, they cite case law for the principle that "[t]o relieve an individual signer from liability, the signer's corporate capacity must be clear from the form of signature." *See DBL Distrib., Inc. v. 1 Cache, L.L.C.*, 2006 UT App 400, ¶ 13, 147 P.3d 478. The Stones' assertion is unsound.

¶ 30 At best, the Stones' argument could support the conclusion that they signed the non-waiver agreement in their personal capacity and may be subject to any liability it imposes. However, as discussed below, nothing in the non-waiver agreement imposes liability on the parties to the agreement. *See infra* ¶¶ 42–43. Furthermore, their signatures did not transform the Stones into "de facto" insureds under the insurance policy. *Cf. Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1384 (7th Cir.1988) ("[W]e cannot disregard the corporate form by treating [the plaintiff shareholder] as the de facto insured party."). A contrary conclusion would lead to the absurd result that Safeco insured the Stones' personal property when they paid no premiums to gain that coverage.

¶ 31 Because the Stones were not named insureds under the insurance policy, they lack standing to pursue contract claims under the policy. We therefore affirm the district court's grant of summary judgment on this issue.

### B. Intentional Infliction of Emotional Distress Claim

■ ¶ 32 The district court held that the Stones lack standing to pursue their claim for intentional infliction of emotional distress based on the Utah Court of Appeals' reasoning in *Stocks*. The Stones argue that the district court erred by applying *Stocks* because the case "does not address the facts presented here, nor accurately reflect Utah law on the subject."

■ ¶ 33 "[T]he question of whether a given individual ... has standing to request a particular [form of] relief is primarily a question of law, although there may be factual findings that bear on the issue." *Wash.*

*Cnty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 18, 82 P.3d 1125 (third alteration in original) (internal quotation marks omitted). This court has never specifically addressed under what circumstances a shareholder of a corporation may have standing to pursue a claim of intentional infliction of emotional distress. When faced with an issue of first impression, this court often looks to other jurisdictions for guidance. *See Park v. Stanford*, 2011 UT 41, ¶ 13, 258 P.3d 566.

¶ 34 The vast majority of jurisdictions, like ours, consider the corporation to be the correct party to bring suit for an injury, rather than the shareholders who experience loss due to their pecuniary interest in the business. *See Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1031–32 (Utah 1979); *see also Kush*, 853 F.2d at 1383 ("We are reluctant to find that every action detrimental to a *corporation* gives rise to a tort claim by each of the company's *stockholders*. That holding could quickly lead to absurd results."); *Pepe v. Gen. Motors Acceptance Corp.*, 254 N.J.Super. 662, 604 A.2d 194, 196 (N.J.Super.Ct.App.Div.1992) ("The law is clear and uniform: shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations. Nor can stockholders assert individual claims for wages or other income lost because of injuries assertedly done to their corporations." (citations omitted)); *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 297 (Tex. App.1990) ("If a corporation is injured by a party's conduct, the corporation is the proper party to bring suit, and shareholders of the corporation injured by virtue of the diminution in value of their shares may not recover directly for their losses ....").

¶ 35 Courts frequently recognize an exception to this rule, however, and grant standing to a shareholder who has experienced a distinct injury that is not derivative of the harm to the corporation. These "courts allow a shareholder to sue directly only where there is a direct injury to the shareholder in his or her individual capacity, independent of any duty owed the corporation." *State Nat'l Bank*, 802 S.W.2d at 298. Put another way, "a wrong suffered directly and solely by the

shareholder, not derivative of any loss or injury sustained by the corporation," is sufficient to confer standing. *Pepe,* 604 A.2d at 197; *see also Harpole Architects, P.C. v. Barlow,* 668 F.Supp.2d 68, 77 (D.D.C.2009) (requiring that a shareholder "identify a legal interest that has been directly or independently harmed, i.e., a 'special injury' that does not derive from the injury to the corporation"); *Audio Odyssey, Ltd. v. United States,* 243 F.Supp.2d 951, 959 (S.D.Iowa 2003) ("It is true that the shareholder standing rule does not apply when the alleged injury is distinct from that suffered by the corporation or other shareholders." (internal quotation marks omitted)), *aff'd,* 373 F.3d 870 (8th Cir.2004).

¶ 36 A few courts have applied these principles to shareholder claims of intentional infliction of emotional distress. These courts have uniformly held that shareholders have no standing to pursue a claim of intentional infliction of emotional distress based on the destruction or degradation of the corporation. *See, e.g., Barlow,* 668 F.Supp.2d at 77; *State Natl. Bank,* 802 S.W.2d at 298. Such an injury is the quintessential derivative harm that does not give rise to a distinct injury for standing purposes. "Doubtless a sole shareholder may suffer shame and humiliation when the corporation is destroyed, but an emotional injury exception would swallow the rule against shareholder standing." *Audio Odyssey,* 243 F.Supp.2d at 959 (internal quotation marks omitted). To "'cinch matters.'" some courts have looked at whether the corporation has pursued the same causes of action as the shareholder and alleged the same injuries. *Barlow,* 668 F.Supp.2d at 77 (quoting *Pagan v. Calderon,* 448 F.3d 16, 29 (1st Cir.2006)). This comparison provides a useful prism for determining whether a shareholder's injuries are indeed derivative of the corporation's.

¶ 37 Although this court has not previously addressed the circumstances necessary to confer standing on a shareholder alleging intentional infliction of emotional distress, our court of appeals did so in *Stocks.* In that case, shareholders of a closely held corporation brought a claim of intentional infliction of emotional distress against an insurer that had issued a commercial general liability insurance policy to the corporation. *Stocks,* 2000 UT App 139, ¶¶ 3, 6, 3 P.3d 722. The shareholders claimed mental and emotional distress from having to fund their corporation's litigation costs after the insurer improperly denied coverage under the policy. *Id.* ¶ 6. The district court granted the insurer's motion for summary judgment, "ruling that the [shareholders] lacked standing in their individual capacities to bring suit as their claims ... [were] entirely derivative of the claims against their corporation." *Id.* ¶ 7.

¶ 38 The court of appeals affirmed the grant of summary judgment. It noted first the requirement under Utah law that a plaintiff must "'show that he has suffered some distinct and palpable injury'" to gain standing. *Id.* ¶ 10 (quoting *Jenkins v. Swan,* 675 P.2d 1145, 1148 (Utah 1983)). It also recited this court's observation that "[i]t is well-settled that 'even though a shareholder owns all, or practically all, of the stock in a corporation, such a fact does not authorize him to sue as an individual for a wrong done by a third party to the corporation.'" *Id.* ¶ 11 (quoting *Norman,* 596 P.2d at 1031–32). The court of appeals, however, noted an exception to the shareholder's incapacity to bring an individual suit where "'the harm to the corporation also damaged the shareholder *as an individual rather than a shareholder.*'" *Id.* (quoting *DLB Collection Trust v. Harris,* 893 P.2d 593, 598 (Utah Ct.App.1995)). The harm must be a "violation of a duty arising from a contract or otherwise, and owed directly to the shareholder." *Id.* (internal quotation marks omitted).

¶ 39 As to the *Stocks* shareholders, the court of appeals held that their mental and emotional distress was alleged to be "a result of the damage to [the corporation], not as a direct result of any breach or damage to [them] personally." *Id.* ¶ 17. The shareholders had alleged only distress arising from having to personally guaranty the corporation's debts and finance the corporation's litigation. *Id.* ¶ 14. This was insufficient to confer standing to the shareholders.

¶ 40 Although the Stones assert that *Stocks* is inapplicable to this case, we view it

as entirely on point. It stands for the well-accepted principle that a shareholder alleging intentional infliction of emotional distress must allege a distinct, palpable injury that is not derivative of the harm to the corporation. This rule has no exception for shareholders of a closely held corporation, even though they may bear the brunt of the harm to the corporation more heavily. Here, the Stones are shareholders of a closely held corporation who have alleged intentional infliction of emotional distress. *Stocks* accurately reflects Utah law and widely accepted principles concerning corporate law, and we see no reason to disavow its analysis or its application to this set of circumstances.

¶ 41 Although the Stones disagree that *Stocks* is relevant to this case, they claim that, even under the reasoning in *Stocks,* they have asserted distinct and palpable injuries that are not derivative of the harm to Stone Flood. For example, they assert that they were forced to mortgage their home to obtain operating funds for Stone Flood, that Stone Flood suffered a diminished reputation, and that they had to personally guarantee some of Stone Flood's business deals with suppliers and others. Each of these injuries, however, is either a direct harm to Stone Flood or derivative of the harm to Stone Flood and therefore insufficient to confer standing to the Stones.[6] *See Taha v. Engstrand,* 987 F.2d 505, 507 (8th Cir.1993) ("Shareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation"). Nor have the Stones shown a special duty that Safeco owed to them. *Id.* The Stones selected a corporate form that provides certain benefits, including insulation from personal liability. *See Kush,* 853 F.2d at 1384. Their selection of this corporate

form also limits their ability to pursue damages for injuries that are derivative of the corporation's. *Id.* Accordingly, the Stones "may not move freely between corporate and individual status to gain the advantages and avoid the disadvantages of the respective forms." *Id.*[7]

¶ 42 One final alleged injury also merits discussion. The Stones contend that when they signed Safeco's non-waiver agreement, it was "in fact tantamount to a personal guaranty" that subjected them to potential liability. According to the Stones, the non-waiver agreement required them to repay Safeco's $25,000 in the event that Safeco denied coverage under the insurance policy. The requirement that the Stones assume liability for repayment under the non-waiver agreement would indeed appear to be a distinct, non-derivative injury. Such a guaranty—between shareholders and the insurer—is distinct from the circumstances in which a shareholder has guarantied corporate debt, which most courts hold is insufficient to provide standing. *See, e.g., Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 488 S.E.2d 215, 221 (1997) (adopting the "majority position ... that guarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation").

¶ 43 After reviewing the non-waiver agreement, however, we do not accept the Stones' characterization of it as "tantamount to a personal guaranty." The non-waiver agreement contains no language imposing personal liability on the Stones. It states that the insured, by signing the agreement, recognizes that Safeco's payment under the policy would not "be construed as a waiver of the right, if any, of [Safeco] to deny liability" under the policy. Additionally, by signing

---

6. The Stones also argue that they have suffered a distinct and palpable injury because, by statute, a creditor may enforce a claim "against a shareholder of [a] dissolved corporation, if ... assets have been distributed in liquidation." Utah Code Ann. § 16–10a–1408(2) (2009). Yet this injury is also derivative of the harm to the corporation, as it merely allows creditors to seek proceeds from *corporate assets.* It does not allow creditors to seize shareholder dividends or other benefits derived from shareholder status, and the "shareholder's total liability for all claims ...

may not exceed the total value of assets distributed to him." *Id.*

7. We note that the Stones and Stone Flood shared the same causes of action in the amended complaint, except for intentional infliction of emotional distress. Although this observation does not entirely "cinch" matters, *Barlow,* 668 F.Supp.2d at 77, it reflects the Stones' conflation of their injuries with those of the corporation.

the agreement the insured waived no rights under the insurance policy. None of this language imposes personal liability upon the Stones, and it does not amount to the execution of a personal guaranty.[8]

¶ 44 We affirm the district court's conclusion that the Stones lack standing to pursue their intentional infliction of emotional distress claim. The Stones have failed to raise a distinct injury that is not derivative of the alleged harm to Stone Flood. Although this may be a harsh result for shareholders of a closely held corporation, they selected the corporate form and may not simultaneously enjoy its benefits while circumventing its disadvantages.

## CONCLUSION

¶ 45 We reverse the district court's determination that Stone Flood's contract claims under the insurance policy are barred by the relevant statute of limitations. The court's calculation of the appraisal tolling period was incorrect. A correct calculation, as described above, saves Stone Flood's claims under the limitations period. As to the Stones' claims, we affirm the district court's grant of summary judgment. The Stones are not named insureds under the insurance policy and therefore lack standing to pursue contract claims under the policy. In addition, their claim of intentional infliction of emotional distress alleges injuries that are entirely derivative of the injuries to the corporation. They therefore lack standing to pursue this claim.

¶ 46 Accordingly, we reverse in part and affirm in part the district court's grant of summary judgment and remand this case for further proceedings.

Chief Justice DURHAM authored an opinion, in which Associate Chief Justice DURRANT, Justice Parrish, Justice NEHRING, and Judge HADFIELD joined.

Having recused himself, Justice LEE did not participate herein; District Judge BEN H. HADFIELD sat.

---

**8.** We also note that no liability ever accrued under the non-waiver agreement. Safeco determined that coverage was triggered and ultimate- ly paid Stone Flood more than $1 million under the policy.